[No. C001323. Third Dist. Apr. 13, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ROSS ALLEN KOCH, Defendant and Appellant.

COUNSEL

Blackmon & Drozd, Dale A. Drozd, James R. Lucas and Clyde M. Blackmon for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SPARKS, J.—In *Segura* v. *United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599, 104 S.Ct. 3380], the United States Supreme Court upheld the seizure of incriminating evidence obtained from a private residence under a valid search warrant even though the police had earlier made an unlawful entry into the residence. Since the search warrant had been issued on information obtained by the police before the illegal entry, there had been an independent source for its issuance and consequently suppression of the evidence was not constitutionally compelled. Four years later, in *Murray* v. *United States* (1988) 487 U.S. 533 [101 L.Ed.2d 472, 108 S.Ct. 2529], the high court was "faced with the question whether, again assuming evidence obtained pursuant to an independently obtained search warrant, the portion of such evidence that had been observed in plain view at the time of a prior illegal entry must be suppressed." (*Id.,* at p. 535 [101 L.Ed.2d at p. 479].) Once again the high court held that the Fourth Amendment would not compel suppression if the search warrant sprang from a genuinely independent source. The independent source doctrine, the *Murray* court ruled, is not limited just to evidence obtained for the first time during an independent lawful search; "it applies also to evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." (*Id.,* at p. 537 [101 L.Ed.2d at p. 480].)

But in neither *Segura* nor *Murray* had the earlier illegal entry been revealed to the magistrate who issued the search warrant. Here, unlike *Segura* and *Murray,* the prior illegal entry by the police was disclosed to the magistrate. Thus, this case presents a not unprecedented variation on the theme of the independent source doctrine. The central question on appeal concerns the effect of that disclosure on the validity of the warrant. Under the principles announced by the high court in *Murray,* we conclude that the test is now a two-fold one. First, the illegal observations and information derived from them must be excised and the affidavit then retested for probable cause. Second, if probable cause is still shown by the excised affidavit, then the prosecution must satisfy its "burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." (*Murray, supra,* 487 U.S. at p. 540 [101 L.Ed.2d at p. 482].)

Because the trial court understandably did not address this new second prong of the test, we must remand the case for further proceedings.

## Synopsis

After the denial of his motion to suppress evidence (Pen. Code, § 1538.5), defendant Ross Allen Koch pled guilty to possession of heroin (Health & Saf. Code, § 11350) and to possession of marijuana for sale (Health & Saf. Code, § 11359). Sentenced to state prison, he appeals contending the trial court erred in denying his suppression motion. He argues that (1) the warrantless entry was not justified by any exception to the warrant requirement and hence was illegal; (2) the unlawful entry of his home by police officers rendered a subsequent search pursuant to a warrant invalid; (3) no independent source was shown by the affidavit because, when stripped of observations made during the warrantless entry, it failed to establish probable cause for the search; and (4) the evidence discovered during the unlawful entry must be suppressed even if the redacted affidavit established probable cause.

## The Suppression Motion

At approximately 5:45 p.m., on February 27, 1986, police officers from the City of Sacramento and officers from the California Highway Patrol executed a search warrant for defendant's residence at 1417 Topaz Way in Sacramento. There they seized several items of evidence which were the subject of defendant's suppression motion in the superior court. The seized evidence included a bag of hypodermic syringes, papers consistent with drug transactions, a triple-beam balance scale, a revolver, stereo equipment with defaced numbers and a plastic bag containing marijuana and hashish.

Since a search warrant may issue only if probable cause has been shown by oath or affirmation (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; Pen. Code, § 1525), we start with the affidavit supporting the warrant in this case.

The affidavit was executed by Officer Joe Sharp of the California Highway Patrol. It established that during the early morning hours of February 27th, a pickup truck was stopped for erratic driving by California Highway Patrol Officers Whamond and Walker. The driver, one James McDonald, was arrested for driving under the influence. Drug paraphernalia was observed on the floorboard of the driver's side. Defendant, a passenger who displayed signs of being under the influence of a narcotic, was asked to exit the vehicle. On the floorboard in the passenger area, Officer Whamond, who was trained in drug detection, observed a measuring spoon containing a tab

of brown substance appearing to be heroin. Defendant was arrested for possession of a controlled substance.

A search of the truck revealed two hypodermic syringes beneath the driver's seat, five foil bindles containing heroin on the console between the seats, a leather bag on the floorboard of the passenger's side, and a fully loaded handgun. The bag contained $3,605, documents bearing the name of both McDonald and defendant, a notebook with numerical transactions commonly associated with drug dealing, and a calculator. Defendant claimed the bag and the money were his.

Later that morning, "CHP Personnel" met with officers of the Sacramento County Narcotic Task Force and were briefed on the cases against McDonald and defendant as well as being informed that Officer Sharp was applying for search warrants for the residences of defendant and McDonald. Officers went to an address on Lake Forest Drive, given by defendant as his residence, for the purpose of securing it. There they complied with knock-notice requirements and when no one responded they forced entry. The premises had been vacated and neighbors informed the officers that defendant no longer resided there.

The officers obtained the telephone number of defendant's mother and called her at her place of employment. She confirmed that her son had moved and reported that he now lived in a duplex on Topaz Avenue. She provided the officers with defendant's brother's telephone number since the brother lived next door to defendant. An officer, posing as a telephone company lineman, called the brother's residence, spoke with defendant's sister-in-law and was told by her that defendant lived next door at 1417 Topaz Avenue.

The officers went to the Topaz Avenue address intent upon securing it. They again complied with knock-notice requirements and when no one responded they once again forced entry. A search through the residence for other persons disclosed that no one was present. The officers observed one-quarter to one-half pound of marijuana in plain view on a couch located in the dining room. They also found syringes in a bedroom. Miscellaneous documents and stereo equipment with defaced serial numbers were also discovered. Leaving the contraband and evidence where they found them, the officers then exited the residence and secured it.

Officer Sharp, who had been requested to stand by in his application for the search warrant, was advised of the Topaz Avenue address and of the observations made by the officers, including the fact that marijuana was seen in defendant's residence. Most of this information was then included in

the affidavit by Officer Sharp. After reciting the facts surrounding the entry of the house, the affidavit went on to state: "The residence was then checked for occupants with none being found. During the search for occupants Det. Gritzmacher observed in plain view approximately ¼ to ½ pound of marijuana in white translucent bag on the couch in the dining room area. Det. Gritzmacher also observed several checks on the floor near the marijuana in the name of Ross Koch. Officers then secured and exited the residence and are currently awaiting the search warrant." The affidavit was executed at 2:50 in the afternoon of February 27th and the warrant was issued immediately thereafter. As we have noted, the warrant was executed at approximately 5:45 that same afternoon.

Defendant moved to suppress all the evidence seized from his residence. Among other things, defendant contended that the subsequently issued search warrant was tainted by the illegal warrantless entry and thus all the evidence seized from the residence must be suppressed. In opposition to the motion, the prosecutor argued that exigent circumstances justified securing the premises pending the issuance of a search warrant. Assuming for the sake of argument that the entry was illegal, the prosecutor further argued that there was enough information to establish probable cause from sources unconnected with the entry and this information purged any taint from the entry. Finally, the prosecutor contended that in any event the officers acted in good-faith reliance upon the warrant within the meaning of *United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].

After considering the extensive briefing on the issue, the trial court then addressed the technique it should employ in determining the validity of the warrant.[1] "Do we say," the court asked rhetorically, "the entire affidavit is bad because it held some [illegally obtained] information or do we only strike that which was improperly gotten . . . and then see if there's sufficient probable cause without it." Electing not to strike the entire affidavit, the trial judge announced that he was "going to reach my result on the theory that you need not declare the entire affidavit invalid, you can in effect excise and test the sufficiency otherwise . . . ." Having excised from the affidavit the observations made during the earlier entry to secure the premises, the court found the remaining averments to be sufficient to establish probable cause for the issuance of the warrant. The motion to suppress the evidence was therefore denied and this appeal eventually followed after defendant pled guilty. (See Pen. Code, § 1538.5, subd. (m).)

---

[1] Although the trial court did not explicitly find that there were no exigent circumstances, it did acknowledge that the prosecution's showing of the necessary components of those circumstances was "sketchy." Moreover, the court's decision to excise the part of the affidavit relating to the observations made during the warrantless entry and then to retest it necessarily presupposes that the court found the warrantless entry was unreasonable under the Fourth Amendment.

## DISCUSSION

### I.

### ENTRY TO SECURE THE RESIDENCE

Defendant launches his appellate attack by challenging the warrantless entry into his residence. There are two prongs to his argument. ■ First, he asserts that the police lacked probable cause for the warrantless entry, thus precluding the application of any exception to the warrant requirement of the Fourth Amendment. ■ Second, he contends that even if the officers had probable cause to believe that contraband was located in his residence, the record is devoid of any reasonable and articulable suspicion of exigent circumstances justifying the warrantless entry. ■ ■ Under either hypothesis, the entry was illegal.[2] The Attorney General counters by contending that probable cause existed and that a threat of immediate destruction of evidence constituted the exigent circumstance justifying the warrantless entry. On this last point, defendant has the better argument.

### A.   *Probable Cause.*

■ We begin by noting that an "[e]ntry into a person's home is so intrusive that such searches always require probable cause regardless of whether some exception would excuse the warrant requirement." (*U.S.* v. *Howard* (9th Cir. 1987) 828 F.2d 552, 555.) As another federal court put it, "[p]robable cause to believe contraband is present is necessary to justify a warrantless search, but it alone is not sufficient. Probable cause must exist to support *any* search . . . . Mere probable cause does not provide the exigent circumstances necessary to justify a search without a warrant." (*United States* v. *Rubin* (3d Cir. 1973) 474 F.2d 262, 268, italics in original.)

■ Defendant argues that the police lacked probable cause to believe that his residence contained narcotic contraband when they first made their warrantless entry. We disagree. At the time of their original entry the officers knew these facts, the lawfulness of the discovery of which defendant does not challenge: At the time of defendant's arrest five bindles containing

---

[2] Defendant concedes that in this post-Proposition 8 case, with exceptions not relevant here, unlawfully seized evidence may be suppressed from use in criminal cases only if required by the Fourth Amendment. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Luevano* (1985) 167 Cal.App.3d 1123, 1128 [213 Cal.Rptr. 764].) Thus, federal constitutional law must be applied to determine the sufficiency of the affidavit supporting the search warrant. (*People* v. *Medina* (1987) 189 Cal.App.3d 39, 44 [234 Cal.Rptr. 256].)

heroin were found on a console between defendant and his friend, McDonald; a spoon with heroin and a dissolving agent were observed on the passenger's floorboard; two hypodermic syringes were discovered beneath the driver's seat; there was a loaded handgun and a calculator in the pickup; and most importantly, a leather bag that defendant claimed was his and which contained $3,605 as well as documents bearing the names of defendant and McDonald and a notebook with notations commonly associated with drug transactions.[3] These facts admit to but one reasonable conclusion—at the very least defendant, if not McDonald as well, was trafficking in narcotics.

But, defendant retorts, it requires a "quantum leap" in logic to conclude, based upon the evidence found in the pickup, that additional evidence would then be found in his home. This is simply not so. Under the Fourth Amendment, probable cause is to be gauged by "the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that *contraband or evidence of a crime will be found in a particular place.*" (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317], citations omitted.) Under the federal standard, "[f]or probable cause to exist, a magistrate need not determine that the evidence sought is *in fact* on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." (*United States* v. *Peacock* (9th Cir. 1985) 761 F.2d 1313, 1315, citations omitted, italics in original.)

It is settled under both California and federal law that the total circumstances surrounding an arrest or other criminal conduct can, without more, support a magistrate's probable cause finding that the culprit's home is a logical place to search for specific contraband. Thus, for example, in *People* v. *Johnson* (1971) 21 Cal.App.3d 235 [98 Cal.Rptr. 393], police officers served a search warrant for an apartment rented by the defendant and discovered a machine gun and a quantity of drugs indicating that defendant was a trafficker. There were, however, no signs that the apartment was

---

[3] We note that the officers' illegal entry does not raise a question regarding the affiant's credibility as to the facts. In setting forth these facts we note that defendant did not challenge below, nor does he do so on appeal, the credibility of the affiant, although he could have done so had he made a proper showing. (See *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674]; see also *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 95 [104 Cal.Rptr. 226, 501 P.2d 234].)

being lived in. Based upon this information, along with the affiant officer's expert opinion that those trafficking in drugs often keep some of their stock-in-trade at their residence, a warrant issued for the search of defendant's primary residence. The appellate court concluded that on such facts the affiant officer's belief that additional evidence would be found at the defendant's residence "was reasonable." (*Id.,* at pp. 242-243.)

Probable cause to search a defendant's residence was upheld on similar information in *People* v. *Aho* (1985) 166 Cal.App.3d 984 [212 Cal.Rptr. 686]. There officers developed reliable information that the defendant was dealing in drugs and stolen property. They then sought a search warrant for his residence. The affiant officer, an experienced narcotics investigator, stated that persons dealing in controlled substances and stolen property will frequently secrete the contraband in their residences. The reviewing court found that this averment, when added to the information concerning defendant's criminal activities, "adequately support[s] the magistrate's conclusion of probable cause to believe that evidence of defendant's criminal activity, i.e., drugs or stolen property, would be found within defendant's residence." (*Id.,* at p. 993.)

The federal courts have reached the same conclusion on similar facts. For example, in *United States* v. *Stefanson* (9th Cir. 1981) 648 F.2d 1231, defendant was arrested for driving under the influence. At the time of his arrest, defendant possessed some 14 "seconal" capsules. In an affidavit in support of the search warrant for his residence, the affiant officer further established that drugs had previously been discovered at defendant's residence, and that he had several drug-related convictions. Finally, the officer averred that a possessor of such a supply of illegal drugs was likely to have a larger cache at his residence. "Based on these facts," the *Stefanson* court ruled, "the magistrate was reasonable in inferring that probable cause existed to believe that [defendant's] home contained additional drugs." (*Id.,* at p. 1236; accord *United States* v. *Dubrofsky* (9th Cir. 1978) 581 F.2d 208, 213; see also *United States* v. *Spearman* (9th Cir. 1976) 532 F.2d 132, 133.) Similarly, probable cause was upheld for the search of defendant's residence for drugs based upon evidence that defendant had driven a truck into the desert and discarded barrels containing methamphetamine residue. (*United States* v. *Peacock, supra,* 761 F.2d 1313, 1315-1316.)

Here Officer Sharp's unchallenged expertise in narcotics investigation was similarly detailed in the affidavit. Given this background, his conclusion that because defendant was a trafficker in illegal drugs his residence was a likely depository for more contraband or evidence was likewise reasonable under all the circumstances. Contrary to defendant's argument, it was not necessary that the affidavit establish that defendant had exclusive

control of the five bindles. From a "common-sense" reading of the entire affidavit, which of course includes the discovery of defendant's bag containing $3,605 and a notebook of narcotic transactions, one would conclude that both defendant and McDonald were in joint possession of the bindles. Moreover, based upon the officer's lengthy experience, the bindles were packaged for "quick street sales." Such evidence demonstrates to a near certainty that defendant was a narcotics dealer. We therefore conclude that the investigating police officers had probable cause to believe that narcotic contraband would be found in such a dealer's residence. That does not end the question for, as we have noted, a warrantless entry into a residence cannot be justified solely because the officers possessed probable cause. In addition, there must be some exigent or excusing circumstance to permit such an entry. It is to that claimed circumstance that we turn next.

## B. *Exigent Circumstances.*

■ The United States Supreme Court has repeatedly declared that its "past decisions make clear that only in 'a few specifically established and well-delineated' situations, may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it." (*Vale* v. *Louisiana* (1970) 399 U.S. 30, 34 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969], citation omitted.) As a leading commentator has observed, "[n]otwithstanding the claim in *Vale* that exceptions to the warrant requirement are 'specifically established and well-delineated,' it is closer to the truth to say that the 'emergency circumstances exception is "established," but it has not been "well delineated."'" (2 LaFave, Search and Seizure (2d ed. 1987) Warrantless Search for Evidence, § 6.5(a), p. 657, fns. omitted, quoting from *United States* v. *Rubin, supra,* 474 F.2d 262.)

Be that as it may, one of these exceptional circumstances concerns the threatened destruction of evidence. Citing *United States* v. *Curran* (9th Cir. 1974) 498 F.2d 30, 35, and *United States* v. *Rubin, supra,* 474 F.2d 262, 269, the Attorney General notes that courts have held that the threat of immediate destruction of evidence is an exigent circumstance justifying a warrantless seizure of a residence until a search warrant can be obtained. ■ As the Attorney General reconstructs the scene in this case, defendant gave the investigating officers a false home address. "The investigating officers could thus reasonably conclude that [defendant] was attempting to thwart the police investigation. Once [defendant] failed to return to complete a prospective drug transaction, a compatriot at [defendant's] residence could have been alerted that something was amiss. Predictably, evidence would have been destroyed." The flaw in this speculative argument is that it is all based upon pure conjecture.

The *Rubin* court, in what LaFave has called the "most careful treatment of this point" (2 LaFave, *op. cit. supra*, at p. 658), formulated this test for determining whether the possible destruction of evidence justified a warrant entry. ■ "When Government agents . . . have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances, or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts included (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.'" (*Rubin, supra*, 474 F.2d at pp. 268-269, citations omitted.)

■ In making this assessment, it must be recalled that in most circumstances the element of urgency is an indispensable ingredient of any emergency. ■ Exigent circumstances mean "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People* v. *Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333].) ■ Consequently, when the claimed emergency circumstances involve threatened destruction of evidence, the officers must reasonably and in good faith believe from the totality of the circumstances that the evidence or contraband will be destroyed imminently. (See e.g., *Vale* v. *Louisiana, supra,* 399 U.S. at p. 35 [26 L.Ed.2d at pp. 413-414]; *United States* v. *Jeffers* (1951) 342 U.S. 48, 52 [96 L.Ed.2d 59, 64, 72 S.Ct. 93]; *McDonald* v. *United States* (1948) 335 U.S. 451, 454-455 [93 L.Ed.2d 153, 157-158, 69 S.Ct. 191]; *United States* v. *Kunkler* (9th Cir. 1982) 679 F.2d 187, 191-192.) Thus, the government must establish that because of the urgency of the situation a warrant could not be obtained in time. (*United States* v. *Manfredi* (9th Cir. 1983) 722 F.2d 519, 522.) Moreover, "[m]ere fear or apprehension alone that evidence will be destroyed will not justify a warrantless entry of a private home." (*United States* v. *Perez* (8th Cir. 1983) 700 F.2d 1232, 1237.) Instead, "[t]here must exist 'specific and articulable facts which, taken together with rational inferences . . . ,' support the warrantless intrusion." (*United States* v. *Licata* (9th Cir. 1985) 761 F.2d 537, 543.) Moreover, as the California Supreme Court recently noted, the United States Supreme Court has made it plain that the exception for

the prevention of the imminent destruction or removal of evidence "must be narrowly construed." (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1298 [248 Cal.Rptr. 834, 756 P.2d 221].)

██ Tested under these standards, the prosecutorial claim of exigent circumstances must fail. There were no facts here which would lead the officers to conclude that there was an immediate threat of destruction or removal of evidence or contraband. First of all, the officers had no reason to believe that anyone was in defendant's house who could have destroyed any evidence or contraband. Instead, all the evidence suggested that no one was home. Nor were there any other emergency circumstances from which the officers might have reasonably concluded that the factors set forth in *Rubin* necessitated a forced entry into defendant's residence. There was no evidence tending to show that there was any danger to the officers guarding defendant's residence. Nor was there any information that any other possessors of the contraband were aware the police were hot on their trail. While it is true that drugs are readily destructible, there was simply no danger of any destruction here. Finally, time was not of the essence. Indeed, by the time the officers forced entry in defendant's residence some 11 hours had expired from the time of defendant's arrest. Although the officers unquestionably acted diligently, the situation simply was not fraught with any emergency. Consequently, the warrantless entry cannot be justified on exigent circumstances. It follows that the forced entry was illegal and the evidence gathered from observations made inside the residence was unlawfully obtained.[4]

## II.

### VALIDITY OF THE SEARCH WARRANT

██ Defendant begins with the premise that all the original observations in his residence were the product of the unlawful warrantless entry. Consequently, they must be excised from the affidavit. Once these observations are excised, he contends, the redacted affidavit fails to establish

---

[4] Although *Segura* addressed the question "in a rather obscure manner" (2 LaFave, *op. cit. supra*, at p. 673), the majority opinion did state "that where officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the period here involved, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures." (*Segura, supra,* 468 U.S. at p. 798 [82 L.Ed.2d at p. 604].) But after a careful analysis of the *Segura* opinion, LaFave concludes that "[a]ll members of the Court also appear to accept the proposition that a search (i.e., entry) of the premises to facilitate the impoundment requires *both* probable cause and exigent circumstances." (2 LaFave, *op. cit. supra,* at p. 676, italics in original.) We agree with this assessment. Since there were no exigent circumstances in this case, the warrantless entry was unlawful.

probable cause for the search of his residence. Finally, relying on dictum in *Segura,* defendant asserts that the marijuana and other evidence discovered during the warrantless search must be suppressed even if the belated warrant were valid.

We agree that the illegally obtained evidence must be excised and the affidavit retested. But we disagree with defendant's claim that the redacted affidavit failed to establish probable cause. For the reasons already recounted, we find the remaining averments in the affidavit, independent of any information gained from the unlawful entry, constituted probable cause in and of themselves for the search of his residence. Finally, we reject the contention that evidence discovered during the warrantless entry must be suppressed even if the search warrant is valid. Nevertheless, we conclude that the high court's decision in *Murray* compels further findings before the independent source doctrine can be applied to save the warrant.

Since defendant's ultimate position relies upon *Segura,* we examine it first. In *Segura,* a drug investigation implicated defendants Segura and his female companion. Federal agents established a surveillance of the defendants' apartment and arrested Segura in the lobby of his apartment house. The agents took Segura to his apartment, knocked on the door and entered without permission when the door was opened by the female. The agents conducted a limited security check of the apartment, during which they observed drug paraphernalia in plain view. When Segura and his companion were taken to police headquarters, two agents remained in the apartment awaiting the search warrant. The warrant was issued and the apartment searched resulting in the finding of nearly three pounds of cocaine and other evidence.

The federal district court suppressed all of the evidence. The court of appeals, however, reversed in part and affirmed in part, holding that the initial warrantless entry was not justified by exigent circumstances and that the evidence discovered in plain view should have been suppressed but that the evidence found for the first time under the valid warrant was admissible.

The United States Supreme Court granted certiorari, and the only evidence challenged was that discovered for the first time during the service of the search warrant. Thus, the Supreme Court was not asked to pass upon the propriety of the suppression of the plain-view evidence seen as the result of the unlawful warrantless entry. The *Segura* court held that the evidence found for the first time during the execution of the valid and untainted search warrant was admissible because it was discovered pursuant to an independent source. (*Segura, supra,* 468 U.S. at pp. 813-814 [82 L.Ed.2d at pp. 614-615].) In dictum, however, the Supreme Court observed that

"officers who enter illegally will recognize that whatever evidence they discover as a direct result of the entry may be suppressed, as it was by the Court of Appeals in this case." (*Id.,* at p. 812 [82 L.Ed.2d at p. 613].) It is on this dictum that defendant has staked his claim. The claim has since been jumped by the high court.

On June 27, 1988, after the filing of the briefs in this case, the United States Supreme Court issued its opinion in *Murray* v. *United States, supra,* 487 U.S. 533 [101 L.Ed.2d 472]. In *Murray,* federal agents were conducting a surveillance of suspected narcotics traffickers and saw some of the suspects driving vehicles into and out of a warehouse. After those vehicles were lawfully seized elsewhere and found to contain marijuana, the agents made a warrantless entry of the warehouse where they observed several burlap-wrapped bales which were later found to contain marijuana. The agents then left but kept the premises under surveillance while a search warrant was sought. In their application for a warrant to search the warehouse the agents did not mention their prior entry nor did they rely on any observations made during the entry. The warrant issued and its execution resulted in the seizure of the bales along with some customer lists. The evidence had been challenged in the lower courts on the theory that the warrant was invalid because the agents had not informed the issuing magistrate about their warrantless entry, and because it was tainted by that entry. The high court granted certiorari to consider the Fourth Amendment question.

■■■ The *Murray* court began its analysis by noting that the exclusionary rule prohibits the introduction into evidence of testimony concerning knowledge acquired during an unlawful search and derivative evidence that is the product of primary evidence "up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.' " (*Murray, supra,* 487 U.S. at p. 537 [101 L.Ed.2d at p. 480], quoting *Nardone* v. *United States* (1939) 308 U.S. 338, 341 [84 L.Ed. 307, 312, 60 S.Ct. 266].) But almost simultaneously with the development of the exclusionary rule, the court "announced what has come to be known as the 'independent source' doctrine. That doctrine . . . has recently been described as follows: [¶] '[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.' " (*Ibid.,* citation omitted, italics in original.)

Turning to the facts before it, the Supreme Court observed: "Knowledge that the marijuana was in the warehouse was assuredly acquired at the time

of the unlawful entry. But it was also acquired at the time of entry pursuant to the warrant, and if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply. Invoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one." (487 U.S. p. 541 [101 L.Ed.2d at p. 483], italics in original.) In short, the independent source doctrine rests upon "the policy that, while government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply." (*Ibid.*)

Thus, the fact that the officers had earlier discovered the marijuana during the illegal entry does not mean that it must be suppressed. In the application of the independent source doctrine, no legitimate distinction can be drawn between evidence derived indirectly from the unlawful search and direct evidence that is acquired during the course of the search itself. (487 U.S. p. 539 [101 L.Ed.2d at p. 482].) What is critical is not whether the evidence had been earlier discovered during the unlawful search but rather whether the search warrant was predicated upon facts gained from an independent source. "The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." (*Id.,* at pp. 542-543 [101 L.Ed.2d at pp. 483-484], fn. omitted.)

Since the agents' illegal entry and their observations were not included in the affidavit, they could not have affected the magistrate's decision on probable cause. However, because there were insufficient factual findings as to whether the agents would have sought a warrant had they not made their confirmatory initial entry, the high court remanded the case to the trial court for such a determination.

In this case, we have already agreed with defendant that there were no exigent circumstances justifying the officers' warrantless entry into his residence. Because exigent circumstances were the only justification relied upon by the People, we further agree that entry was unlawful and the attendant observations illegally obtained. And since those improper observations were recited in the affidavit, we are left, by a process of legal distillation, with the question of the effect of these revelations on the validity of the search warrant.

Prior to *Murray,* federal reviewing courts had generally held that a search warrant was not automatically invalidated by the inclusion of illegally obtained information in the supporting affidavit. (See, e.g., *Howell* v. *Cupp* (9th Cir. 1970) 427 F.2d 36, 38.) Rather, the question was "whether the affidavit, purged of the illegally obtained information, still affords the magistrate a substantial basis for concluding that a search would uncover evidence of wrongdoing." (*United States* v. *Grandstaff* (9th Cir. 1987) 813 F.2d 1353, 1355.) Thus, the approach adopted by the high court in *Franks* v. *Delaware, supra,* 438 U.S. 154, in dealing with false statements in a warrant affidavit should be employed when illegally obtained information is contained in the affidavit. Illegally obtained facts "should be dealt with in a similar fashion, i.e., they should be set to one side . . . and the remaining content of the affidavit examined to determine whether there was probable cause to search, apart from the tainted averments." (*United States* v. *Veillette* (1st Cir. 1985) 778 F.2d 899, 904.) Following the adoption of section 28 of article I of the California Constitution by the passage of Proposition 8, California courts have adopted a similar analysis. "If lawfully obtained information in a search warrant affidavit supports probable cause for issuance of a warrant, the warrant will be upheld even if additional, illegally obtained, information is also contained in the warrant affidavit." (*People* v. *Angulo* (1988) 199 Cal.App.3d 370, 375 [244 Cal.Rptr. 819]; accord *People* v. *Gesner* (1988) 202 Cal.App.3d 581, 589-590 [248 Cal.Rptr. 324].) The illegally obtained information, it was thought, did not taint the warrant "because the information obtained prior to the entry was sufficient probable cause for issuance of the warrant." (*People* v. *Angulo, supra,* 199 Cal.App.3d at p. 375.)

As we read *Murray,* this line of analysis is no longer sufficient because the prosecution must satisfy additional burdens before the taint of the earlier illegality may be said to have been purged. Obviously, the illegally obtained information must be disregarded since it is the product of the unlawful entry, the infamous fruit of the poisonous tree. But the mere excision of the illegally obtained information can no longer be deemed, by itself, sufficient to dissipate the taint. As the *Segura* court phrased it, "[t]he question to be resolved when it is claimed that evidence subsequently obtained is 'tainted' or is 'fruit' of a prior illegality is whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint.'" (*Segura* v. *United States, supra,* 468 U.S. at pp. 804-805 [82 L.Ed.2d at p. 608], quoting *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407], multiple quotation marks omitted, italics in original.)

If the magistrate relied upon the illegally obtained information in reaching his conclusion that probable cause had been shown by the affidavit, then

it could not be said that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint. Rather, the reliance by the magistrate would constitute an exploitation of the fruits of the illegal entry. Similarly, if the officers would not have sought a warrant but for their illegal observations, the taint would not have been purged. Consequently, when officers enter a premises illegally, the *Murray* court held, they "add to the normal burden of convincing a magistrate that there is probable cause the much more onerous burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant *or the magistrate's decision to grant it.*" (*Murray, supra*, 487 U.S. at p. 540 [101 L.Ed.2d at p. 482], italics added.)

Thus, it is no longer sufficient for the prosecution to simply establish that the warrant affidavit still contained probable cause after the illegally obtained observations have been excised. "[W]hat counts is whether the actual illegal search had any effect in producing the warrant . . . ." (487 U.S. at p. 542, fn. 3 [101 L.Ed.2d at p. 483].) Consequently, in order to justify the application of the independent source rule in this case the trial court must "explicitly find that [the officers] would have sought a warrant [even] if they had not earlier entered [defendant's residence]." (*Id.,* at p. 543 [101 L.Ed.2d at p. 484].) The court must also explicitly find that the magistrate would have issued the warrant even if the information derived from the illegal entry had not been included in the affidavit.[5] Because the trial court understandably did not presciently make these findings, we must remand the cause to the trial court "for determination whether the warrant-authorized search of the [defendant's residence] was an independent source of the challenged evidence in the sense we have described." (*Ibid.*) Moreover, since the trial court did not reach the question of whether the officers acted in good-faith reliance upon the warrant within the meaning of *United States v. Leon, supra,* 468 U.S. 897 [82 L.Ed.2d 677], we have no occasion to consider whether *Leon* applies under the circumstances of this case and if so

[5] Because the precise issue was not before it, the *Murray* court did not have occasion to consider the evidentiary question of how the prosecution might prove that "no information gained from the illegal entry affected . . . the magistrate's decision to grant [the search warrant]." (*Murray, supra,* 487 U.S. at p. 540 [101 L.Ed.2d at p. 482].) Since the issuing magistrate is competent to testify on that question (cf. Evid. Code, § 703.5), he of course may be called as a witness. Alternatively, the People may seek to carry their burden without calling the magistrate by arguing from the facts and circumstances already before the court that it is unlikely that the magistrate was influenced in favor of issuing the warrant by the illegally obtained information. If these facts and circumstances tend to support such an inference, the trial court, when pursuaded, may draw the inference that the magistrate's decision to issue the warrant was not affected by the tainted information. In either event, the court, in order to justify a conclusion that there was an independent source, must explicitly find that the magistrate would have issued the warrant even if the illegally obtained information had not been included in the affidavit.

whether the officers acted in good faith. If, on remand, the trial court determines that the warrant did not constitute an independent source for the seizure of the challenged evidence, it shall then decide the *Leon* issue.

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court with directions to conduct further proceedings and then make findings on the question of whether the search incident to the warrant was an independent source of the challenged evidence. If it finds that the warrant constituted an independent source, the trial court is further directed to deny the motion to suppress and to reinstate the judgment. If it finds that the warrant was not an independent source, the court shall then decide the issues relating to *United States* v. *Leon, supra,* 468 U.S. 897 [82 L.Ed.2d 677].

Blease, Acting P. J., and Marler, J., concurred.

On May 1, 1989, the opinion was modified to read as printed above.