[No. A055101. First Dist., Div. One. July 2, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JON LESLIE GENTRY, Defendant and Appellant.

1256

## COUNSEL

Stephanie Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STRANKMAN, P. J.**—Jon Leslie Gentry appeals from a judgment entered upon a plea of nolo contendere following denial of his motions to suppress evidence. This case arises out of a warrantless police entry and impoundment of a residence which appellant was visiting and in which he was held until a search warrant could be procured. Appellant contends that his incriminating statements should have been suppressed because the entry was illegal and his restraint was an arrest without probable cause. We agree, and reverse the judgment and remand the case to permit appellant to withdraw his plea.

### STATEMENT OF FACTS

Evidence submitted at the preliminary hearing established the following facts. On March 8, 1991, an informant telephoned the narcotics bureau of the City of Vacaville and reported that Steven Dallas was selling marijuana from the trunk of a yellow Ford parked across the street from an apartment building on South Jefferson Street in the City of Dixon. The record is unclear, but it appears that the informant advised the police that Dallas was living at the apartment building, but was unsure whether he lived in unit No. 3 or unit No. 4. In his telephone conversation with the police, the informant did not mention appellant in any way and did not say that marijuana was being sold from the apartment. The informant did say that marijuana was being sold at a "very fast rate."

Based on the police officers' training and experience regarding drug transactions, they believed that marijuana was being stored at Dallas's apartment. The police began to draft an application for a search warrant permitting them to search Dallas and the yellow Ford. The record is again

unclear, but apparently the scope of the search warrant was originally intended to include apartments Nos. 3 and 4. While the warrant application was being prepared, police officers were dispatched to secure the two apartment units and the car.

The police arrived at the apartment complex and found Dallas outside, in the driveway of the complex, and placed him in custody. Apartment No. 3 was investigated and determined to be unrelated to Dallas and drug-dealing activities. This information was conveyed to the applicant for the warrant back at the police station, and thus the later-issued search warrant does not extend to apartment No. 3.

Meanwhile, other officers approached apartment No. 4, knocked on the door, identified themselves as police, and demanded entry. Upon entering apartment No. 4 without consent, the police performed a quick, cursory search to locate occupants, moved the occupants into the living room, and waited for the search warrant to be issued before conducting a search for contraband. The occupants of the apartment were appellant and two women and the women's several children. All adult occupants were handcuffed. Later, the handcuffs were removed from one of the women so that she could attend to the children. Dallas was brought upstairs and sat on the living room floor in handcuffs with the other apartment occupants.

Appellant had been babysitting during the absence of one of the women residents who had just returned to the apartment. There was no indication that appellant was living at the apartment, and the police conceded that they had no reason to believe that appellant was a resident. The police also conceded that they had no probable cause to believe that appellant was engaged in criminal activity. Nevertheless, the police detained appellant and the other apartment occupants until a search warrant could be issued approximately three and one-half hours later.

Once a warrant was issued, the police conducted a search of the apartment and found a number of plastic bags in a hall closet. The bags contained a combined total of 196.25 grams (just under 7 ounces) of marijuana. One of the women occupants testified that the police announced that they were going to arrest Dallas and the three adult occupants and that it was at this point that appellant "said just to let the girls go, they have no part of it. It is not theirs, and it was his; and he just kept telling them to let us go." Appellant reportedly yelled to one of the women to tell the police that the marijuana was appellant's, and she did so.

However, the police testimony contradicts the claim that appellant admitted ownership of the marijuana at this juncture.[1] The testifying officer stated that the police discovered the marijuana and formally arrested appellant and Dallas. After the arrest, one of the women occupants became upset upon being advised that Dallas was arrested and stated that the marijuana belonged to appellant and not Dallas. Although ambivalent on the point, the police effectively denied that appellant made any statement while at the apartment. According to the police, appellant was taken to the police station, advised of his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 10 A.L.R.3d 974]), and then interviewed by two detectives. It was at the police station, for the first time, that appellant admitted that the marijuana was his. Appellant further stated that he purchased the marijuana for the purpose of selling it. The police dusted the plastic bags of marijuana and found appellant's fingerprint on one of the bags. The testifying officer did not know if the fingerprint comparison was made with appellant's fingerprints from this arrest or from fingerprints which may have been on file.

### STATEMENT OF PROCEEDINGS

Appellant was charged with possession of marijuana for sale. (Health & Saf. Code, § 11359.) At his preliminary hearing, he unsuccessfully moved to suppress all incriminating statements. (Pen. Code, § 1538.5.) The suppression motion was aimed at other evidence as well, but the only issue raised on appeal relates to appellant's statements.

A magistrate of the municipal court found that the entry and detention were lawful. Appellant renewed his motion to suppress in the superior court and also moved to dismiss the charge. (Pen. Code, § 995.) Both motions were denied. The motion to suppress was submitted to the superior court on the preliminary hearing transcript. In denying the motion to suppress, the superior court found that exigent circumstances justified the entry and that the detention was lawful. Before both the municipal and superior courts, the People argued that the police conduct was lawful and did not argue, or present evidence, that appellant's statements were not the "fruit" of the conduct. Following denial of appellant's motion to suppress and motion to dismiss, appellant withdrew his plea of not guilty and entered a plea of nolo contendere. Judgment was entered, and appellant was sentenced to serve 16 months in state prison. This appeal followed.

---

[1] We accept this testimony as controlling, since all factual conflicts must be resolved in favor of the disposition of the motion to suppress. (*People* v. *Martin* (1973) 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161], cert. den. (1973) 414 U.S. 1113 [38 L.Ed.2d 740, 94 S.Ct. 844].)

## DISCUSSION

Appellant contends that there were no exigent circumstances justifying the warrantless entry of the apartment and that his three-and-one-half hour detention awaiting issuance of a search warrant of the apartment he was visiting was illegal. We agree and discuss the two contentions in the order presented.

### NO EXIGENT CIRCUMSTANCES JUSTIFIED THE WARRANTLESS ENTRY

█ "[A] warrantless entry by the police into a residence is at least presumptively unreasonable and therefore unlawful." (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1297 [248 Cal.Rptr. 834, 756 P.2d 221], cert. den. (1989) 488 U.S. 1050 [102 L.Ed.2d 1006, 109 S.Ct. 883].) However, probable cause and exigent circumstances justify a warrantless search, or an entry to secure a residence while awaiting issuance of a warrant.[2] (*Ibid.*; *People* v. *Camilleri* (1990) 220 Cal.App.3d 1199, 1209 [269 Cal.Rptr. 862].) As stated by a federal court, when the police "have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified." (*United States* v. *Rubin* (3d Cir. 1973) 474 F.2d 262, 268, cert. den. *sub nom. Agran* v. *United States* (1973) 414 U.S. 833 [38 L.Ed.2d 68, 94 S.Ct. 173.) Here, appellant does not challenge the existence of probable cause to believe that marijuana was stored at Dallas's apartment. Appellant does argue that no exigent circumstances were established.

█ Once a defendant proves a warrantless entry, "the burden shifts to the prosecution to prove that the entry was nevertheless reasonable" due to the presence of exigent circumstances. (*People* v. *Williams, supra,* 45 Cal.3d at p. 1300.) In evaluating exigency, relevant factors include " '. . . (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." ' " (*People* v. *Koch* (1989) 209 Cal.App.3d 770, 782

---

[2] The nature of the exigency defines the scope of the search, and thus exigent circumstances may justify a warrantless entry and securing of premises but not justify a full scale search of the contents of the premises. A warrantless entry or search must be "proportionate to the exigency excusing the warrant requirement." (*U.S.* v. *Socey* (D.C. Cir. 1988) 846 F.2d 1439, 1448, cert. den. (1988) 488 U.S. 858 [102 L.Ed.2d 123, 109 S.Ct. 152].)

[257 Cal.Rptr. 483], quoting *United States* v. *Rubin, supra,* 474 F.2d at pp. 268-269.)

■ Under the procedural posture here of a motion to suppress denied by the municipal court and renewed in the superior court upon the preliminary hearing transcript alone, we are concerned solely with the findings of the municipal court. (*People* v. *Snead* (1991) 1 Cal.App.4th 380, 384 [1 Cal.Rptr.2d 892].) In reviewing the magistrate's denial of appellant's motion to suppress, factual findings are treated under the deferential substantial-evidence standard. (*People* v. *Williams, supra,* 45 Cal.3d at p. 1301.) The magistrate's selection and application of the law is independently reviewed. (*Ibid.*) " '[I]t is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." ' [Citation.]" (*Ibid.*) ■ Here, the magistrate impliedly found that exigent circumstances justified the warrantless entry. In evaluating that finding under the factors articulated in *Rubin,* and reiterated in *Koch,* we find insufficient evidence to support it.

■ " '. . . [F]ear or apprehension alone that evidence will be destroyed will not justify a warrantless entry of a private home.' [Citation.] Instead, '[t]here must exist "specific and articulable facts which, taken together with rational inferences . . . ," support the warrantless intrusion.' " (*People* v. *Koch, supra,* 209 Cal.App.3d at p. 782.) ■ The only evidence of urgency and threat of removal of evidence was the informant's statement that marijuana was being sold by Dallas out of the trunk of his car at a "very fast rate." This "very fast rate" was wholly undefined. There was no evidence of how much marijuana was sold or in what period of time. There was also no evidence that the marijuana, some of which was believed to be stored at the apartment, would be depleted by the time a warrant could be issued. In fact, the police did not even know if marijuana was actually being stored at the apartment. As for the other *Rubin* factors, there was no showing of danger to police officers had they guarded the apartment while seeking a search warrant and no showing that the police believed that Dallas had accomplices in the apartment who would suspect his apprehension and destroy the marijuana. In fact, the police had no information of Dallas working with others and did not even know if anyone was in the apartment. While we recognize that marijuana can be readily destroyed, there was no evidence that its destruction was threatened in this case.

*People* v. *Daughhetee* (1985) 165 Cal.App.3d 574 [211 Cal.Rptr. 633], relied upon by the People, is distinguishable. In *Daughhetee,* the police received a radio dispatch of an armed robbery in which drugs and money were taken. (*Id.,* at p. 578.) The dispatch included a description of the robber,

the "getaway" vehicle and the female driver. (*Id.*, at pp. 577-578.) Within minutes of the dispatch, the police located a vehicle matching the description of the one used in the robbery in front of a residence and saw a woman exit the residence. (*Id.*, at p. 578.) The police apprehended the woman in front of the residence and, when observed by two men looking out the front window, entered the premises and secured it while awaiting the issuance of a search warrant. (*Ibid.*) The court concluded that exigency was established because of possible destruction of evidence and a threat to the officers' safety. (*Ibid.*) Here, unlike *Daughhetee*, the detained suspect was not known to be operating with others; there was no information that the residence was occupied; there was no showing that the scene of detention was in view of the residence or that anyone with possible possession of evidence was or could have been alerted to the police presence; and there was no claimed threat to the officers' safety had they guarded the residence rather than entered it.

The facts here on the question of exigency are closer to those in *Koch*. In *Koch*, the police stopped a vehicle for erratic driving and found drug paraphernalia, heroin, a handgun, money, a calculator and a notebook apparently listing drug transactions. (*People* v. *Koch*, *supra*, 209 Cal.App.3d at pp. 775-776.) The driver and defendant, a passenger, were arrested, and the police determined defendant's address and went there to secure the residence until a search warrant could be issued. (*Ibid.*) The police forced entry, found no one present, observed marijuana in plain view, exited the residence, and guarded it. (*Id.*, at p. 776.) In applying for a search warrant, the police included their observance of the marijuana at defendant's residence. (*Id.*, at pp. 776-777.) The court found the entry to be without exigency and therefore illegal. (*Id.*, at p. 783.) The court excised the observation of the marijuana from the warrant application but found probable cause for the warrant independent of the observations made during the illegal entry. (*Id.*, at p. 784.) The court remanded the case for a determination of whether the police would have sought a search warrant if they had not entered the residence and whether the magistrate would have issued the warrant if the information derived from the illegal entry had not been included in the application. (*Id.*, at p. 788.)

As *Koch* relates to this case, it is significant that the court rejected the "speculative" argument that defendant's failure to return home might alert an unknown compatriot at the residence who could destroy evidence. (*People* v. *Koch*, *supra*, 209 Cal.App.3d at p. 781; see *Vale* v. *Louisiana* (1970) 399 U.S. 30, 35 [26 L.Ed.2d 409, 90 S.Ct. 1969] [arrest on street does not provide exigency justifying warrantless search of arrestee's home on unsupported assumption that evidence may be destroyed].) Here, as in *Koch* and unlike *Daughhetee*, there was no showing that the police reasonably believed that a

compatriot threatened the removal or destruction of evidence. "Where the emergency is the imminent destruction of evidence, the government agents must have an objectively reasonable basis for believing there is someone inside the residence who has reason to destroy evidence." (*People* v. *Camilleri, supra,* 220 Cal.App.3d at p. 1209; accord *U.S.* v. *Socey, supra,* 846 F.2d at p. 1445.)

## THE SEIZURE OF APPELLANT WAS A DE FACTO ARREST

We now turn to the question of the impoundment, or seizure, of the apartment and the detention of appellant. The People rely heavily upon *Segura* v. *United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599, 104 S.Ct. 3380]. In *Segura,* government agents arrested defendant in the lobby of his apartment building and proceeded to make a warrantless entry into his apartment, where there were four occupants. (*Id.,* at p. 800 [82 L.Ed.2d at p. 605].) The agents made a limited security check of the premises and removed all the occupants to headquarters. (*Id.,* at pp. 800-801 [82 L.Ed.2d at pp. 605-606].) Two agents remained in the apartment for 19 hours until a search warrant was issued and executed. (*Ibid.*) The lower courts had concluded that the initial warrantless entry and security search were not justified by exigent circumstances, and that conclusion was not challenged in the United States Supreme Court. (*Id.,* at p. 804 [82 L.Ed.2d at p. 608].) Instead, the primary issue was whether the illegal entry tainted the evidence later discovered when executing the warrant. The court held that "the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as 'fruit' of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385 (1920) [64 L.Ed. 319, 40 S.Ct. 182, 24 A.L.R. 1426]."[3] (*Id.,* at p. 799 [82 L.Ed.2d at p. 604].)

The court also had occasion to consider the legality of the impoundment of the apartment, which is the point with which we are concerned. The illegal entry, or *search,* of the apartment was contrasted with the ensuing interference with possessory interests, or *seizure,* of the apartment. (*Segura* v. *United States, supra,* 468 U.S. at p. 798 [82 L.Ed.2d at p. 604].) "[A] seizure affects only possessory interests, not privacy interests. Therefore, the heightened protection we accord privacy interests is simply not implicated where a *seizure* of premises, not a search, is at issue. We hold, therefore, that securing

---

[3]In recognition of this principle, appellant concedes that the marijuana found in the apartment closet when executing the warrant is not subject to suppression.

a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents."[4] (*Id.*, at p. 810 [82 L.Ed.2d at p. 612].) Occupying the residence was found no more an interference with possessory interests than if the agents had assumed a " 'stakeout.' " (468 U.S. at p. 811 [82 L.Ed.2d at p. 612].)

Contrary to the People's arguments, *Segura* does not resolve the issues we are faced with here. The court's reasoning relies on the fact that the residents of the apartment were under arrest and removed from the premises. "The actual interference with their possessory interests in the apartment and its contents was, thus, virtually nonexistent." (*Segura* v. *United States, supra,* 468 U.S. at p. 813 [82 L.Ed.2d at p. 614].) As one commentator has noted, *Segura* does not address a situation "where the police enter and incident to the entry either keep persons entitled to be in the premises under close scrutiny or else require such persons to leave or not enter those premises." (2 LaFave, Search and Seizure (2d ed. 1987) Warrantless Search for Evidence, § 6.5(c), p. 675.) Such a situation presents a far greater interference with possessory interests than considered by *Segura* and, when individuals are detained, the interference extends beyond possessory interests alone. While *Segura* effectively holds that unoccupied premises may be secured, internally or externally, on the basis of probable cause to search even without exigent circumstances, it does not hold that occupied premises may be internally secured and the occupants detained when no exigency exists.[5]

Many state and lower federal courts have endorsed the view that a residence may be secured and its occupants detained under certain circumstances. (See generally, 2 LaFave, Search and Seizure, *supra,* § 6.5(c), pp. 677-683, and cases there cited.) But we know of no cases permitting impoundment and detention on probable cause alone. Generally, there is a requirement that probable cause to search and exigent circumstances be established. (E.g., *U.S.* v. *Lindsey* (9th Cir. 1989) 877 F.2d 777, 780.) This twofold requirement has been adopted in this state. (*People* v. *Camilleri, supra,* 220 Cal.App.3d at p. 1209; *People* v. *Daughhetee, supra,* 165

---

[4]While this holding is stated in similar language in the beginning of the opinion, assented to by a majority of the court, only two justices agreed with the reasoning for the holding and its elaboration as stated above. (*Segura* v. *United States, supra,* 468 U.S. at pp. 797-798, 805-813 [82 L.Ed.2d at pp. 602-603].) This state of affairs has led the Sixth District to question the precedential value of *Segura*'s ruling on impoundment pending procurement of a warrant. (*People* v. *Camilleri, supra,* 220 Cal.App.3d at p. 1206.)

[5]It must also be emphasized that *Segura* does not authorize an entry to secure premises where there has been no showing of exigency. An entry is a search, and the court reaffirmed that a warrantless search, absent exigent circumstances, is illegal. (*Segura* v. *United States, supra,* 468 U.S. at p. 810 [82 L.Ed.2d at p. 612].)

Cal.App.3d at p. 580; see *People* v. *Shuey* (1975) 13 Cal.3d 835, 848-849 [120 Cal.Rptr. 83, 533 P.2d 211].)

However, the boundaries of the permissible detention of occupants when impounding a residence are largely undefined. The People point out that *Daughhetee*, which upheld the securing of premises, involved the detention of individuals as well as the impoundment of a residence. (*People* v. *Daughhetee, supra,* 165 Cal.App.3d at p. 577.) *Daughhetee* is not helpful here because the detention was not analyzed and we know only that defendant was an occupant of the secured premises who was detained for an unstated period of time. Here, a visitor to the residence was held in handcuffs for three and one-half hours, and appellant directly challenges his detention as a de facto arrest without probable cause.

Appellant was clearly seized within the meaning of the Fourth Amendment: "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 100 S.Ct. 1870], fn. omitted.) The People do not contest this conclusion, but argue that appellant's seizure was not an "arrest" but simply a "detention." As our Supreme Court has observed, there are basically three different levels of police contacts with individuals: (1) " 'consensual encounters' " which involve no restraint of liberty or seizure and may be initiated with no " 'objective justification' "; (2) " 'detentions' " which are seizures strictly limited in duration, scope and purpose and may be conducted upon an " '. . . articulable suspicion that a person has committed or is about to commit a crime' "; and (3) "arrests" which are seizures exceeding the permissible limits of a detention involving restraints comparable to a formal arrest and require probable cause to arrest. (*In re James D.* (1987) 43 Cal.3d 903, 911-912 [239 Cal.Rptr. 663, 741 P.2d 161], cert den. (1988) 485 U.S. 959 [99 L.Ed.2d 422, 108 S.Ct. 1222].)

Here, appellant's seizure was not limited in duration; it lasted three and one-half hours, and the police intended to restrain him and the other occupants for as long as necessary until a warrant could be issued.[6] The seizure was not limited in scope; appellant had absolutely no freedom of movement but was handcuffed and sat in a room under police surveillance. The seizure was not limited in purpose; appellant was not detained for

---

[6]The People's statement that the length of the restraint was "well within the nineteen-hour limit of *Segura*" is based on the faulty view that *Segura* held that individuals could be seized while a search warrant was procured. As discussed above, *Segura* concerned the seizure of unoccupied premises, not the seizure of individuals. (See *Segura* v. *United States, supra,* 468 U.S. at p. 810 [82 L.Ed.2d at p. 612].)

investigatory purposes of determining his identity and relationship to the premises and its residents. Appellant was "arrested," not "detained."

The People's position is not aided by their reference to *People* v. *Bowen* (1987) 195 Cal.App.3d 269 [240 Cal.Rptr. 466] in which a "detention," rather than an "arrest," was found where defendant was handcuffed to a guardrail for 25 minutes while the victim was brought to the scene to make an identification. We agree with *Bowen* that handcuffing does not render every seizure an arrest. (*Id.*, at p. 274.) However, unlike *Bowen*, appellant was not held to permit a speedy, focused investigation to confirm or dispel individualized suspicion of criminal activity.

The People's reliance on *Michigan* v. *Summers* (1981) 452 U.S. 692 [69 L.Ed.2d 340, 101 S.Ct. 2587] is similarly misplaced. In *Summers*, the court held that a "warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (*Id.*, at p. 705 [69 L.Ed.2d at p. 351], fn. omitted.) The court found the intrusion to be limited and thus a "detention," not an "arrest" requiring probable cause. However, in *Summers*, the police were executing a search warrant, not seeking a warrant which may or may not have been issued.[7] In finding that the seizure was a "limited intrusion," the court noted that a warrant was of "prime importance." (452 U.S. at p. 701 [69 L.Ed.2d at p. 348].) "[A] neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home." (*Id.*, at p. 703 [69 L.Ed.2d at p. 350], fn. omitted.) The situation here is markedly different. No neutral and detached magistrate made any finding of probable cause to search the apartment or authorized any invasion of privacy at the time appellant was seized. We decline to extend *Summers* to permit the uncircumscribed seizure of persons during a warrantless entry and impoundment of a residence as presented on the facts here.

Assuming probable cause to search and exigent circumstances justifying the entry and impoundment of a residence, we do not preclude the possibility that the police may temporarily detain individuals for limited purposes, such as for reasonable investigative or protective reasons. However, we conclude that the restraint here, which was not limited in duration, scope or purpose, amounts to an arrest. This conclusion is bolstered by a federal case involving similar facts.

---

[7]Appellant points to another distinction between *Summers* and the facts presented here: *Summers* concerned a resident whose connection to the premises being searched created a ground for suspecting him of criminal activity. Appellant was not a resident, but a visitor. We need not reach the question of whether the rule of *Summers* applies to nonresidents. At least one court has stated that it does not. (*People* v. *Ferguson* (1981) 126 Cal.App.3d Supp. 22, 30 [179 Cal.Rptr. 437].)

In *United States* v. *Neet* (D.Colo. 1981) 504 F.Supp. 1220, the court held that a person required to stay in the living room of an impounded residence for four hours while a search warrant was obtained was effectively arrested without probable cause. The court noted that "virtually nothing was known about [defendant] except that she was present in the house when it was secured. No circumstances known to the officers when they entered the house, or when they first detained her, indicated her involvement in drug dealing. In short, the officers had little or no evidence to justify detaining [defendant] for a time longer than reasonably necessary to obtain her identification and perhaps an explanation of her presence. Since she was not allowed to leave after that was accomplished, the Court finds that she was thereafter under arrest and that her arrest was unlawful because based on neither probable cause nor an arrest warrant." (*Id.*, at p. 1226.) Accordingly, the court suppressed, as fruit of the unlawful arrest, the statements defendant made during execution of the later-issued warrant, which uncovered cocaine in her purse. (*Ibid.*)

We reach a conclusion comparable to *Neet*. Having found that there was insufficient evidence of exigent circumstances justifying the warrantless entry of the apartment and, even if justified, that the seizure of appellant was an arrest without probable cause, we conclude that appellant's statements should have been suppressed. The People's final position, since we have found the conduct unlawful, is to request that we remand the case to allow them an opportunity to prove that the statements were not the product of the police misconduct. This theory and evidence necessary to support it were not presented below. Instead, the People relied on the argument that the challenged conduct was lawful. The People should have presented all evidence and theories relative to the admissibility of appellant's statements at the suppression hearing and are not entitled to a remand where they have failed to do so. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640 [108 Cal.Rptr. 585, 511 P.2d 33].) ■ Where the People resist a motion to suppress on the ground that the police conduct was lawful, they may not reopen the question of the admissibility of evidence sought to be suppressed by claiming that the evidence is not the "fruit" of the conduct subsequently ruled unlawful. (*Ibid.*)

## DISPOSITION

The judgment is reversed and the cause remanded to the superior court. That court is directed to vacate the plea of nolo contendere if appellant makes an appropriate motion within 30 days after this opinion becomes final. In that event, the court should reinstate the original charges contained

in the information, if the People so move, and proceed to trial or make other appropriate dispositions consistent with the views expressed in this opinion. If no such motion is filed by appellant, the trial court is directed to reinstate the original judgment.

Newsom, J., and Stein, J., concurred.