[No. C016841. Third Dist. Feb. 10, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
FERNANDO M. ORTIZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Michael R. Barrette, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SCOTLAND, J.**—While walking down a hotel hallway, two police officers passed the partially open door of a hotel room. Through the doorway, one of the officers observed defendant Fernando M. Ortiz in the room with a woman who was counting out tinfoil bindles and placing them on a table. Reasonably believing the bindles contained heroin, and fearing the contraband might be destroyed if he did not act immediately, the officer entered the room, arrested defendant and the woman, and seized the heroin.

After defendant's motion to suppress evidence was denied, a jury convicted him of possessing heroin (Health & Saf. Code, § 11350), and the trial court found true the allegations that defendant had served a prior prison term (Pen. Code, § 667.5, subd. (b)) and had two prior felony drug convictions (Health & Saf. Code, § 11370.2, subd. (a)). Sentenced to state prison, he appeals.

In the published portion of this opinion, we reject defendant's claim that there was no exigent circumstance to justify a warrantless entry into the hotel room to arrest him and, thus, the evidence seized incident to his arrest should have been suppressed. According to defendant, one officer should have maintained the hotel room under surveillance while the other officer obtained a warrant. As we shall explain, it would be unreasonable to require such an impractical scenario because, viewed objectively, the facts known to the officers and the inferences drawn therefrom were sufficient to lead a reasonable officer to conclude that there was an imminent danger the contraband would be destroyed if he did not act immediately to arrest defendant and seize the evidence.

In the unpublished part of our opinion, we find no merit in defendant's remaining contentions. Accordingly, we shall affirm the judgment.

### Discussion

### I

The record of the hearing on defendant's suppression motion reveals the following facts relating to his arrest and the seizure of contraband:

Stockton Police Officers Daniel Forsythe and Lawrence Vila entered a hotel looking for a man they had seen drinking in front of the hotel. The officers obtained the man's room number from the manager and proceeded down a public hallway. While passing room 52, they noticed its door was

open partially, allowing Forsythe to see into the room. He observed defendant sitting on the bed and saw a woman counting out tinfoil bindles and placing them on a table near the bed. Also on the table were pieces of tinfoil, plastic, a knife, and a razor blade. Forsythe was approximately three to six feet away from the woman when he made this observation. Based on his training and experience, Forsythe concluded the tinfoil bindles contained heroin possessed for sale. Fearing the evidence would be destroyed if he did not act immediately,[1] Forsythe pushed the door open all the way and walked into the room, accompanied by Vila. As the officers entered the room, the woman walked away from the table and dropped several of the tinfoil bindles she had in her hand. She told Forsythe "the heroin did not belong to her, and she was just counting it for [defendant]." Vila opened one of the tinfoil bindles which was on the table. It contained a dark tar-like substance. Forsythe arrested defendant and the woman for possessing heroin for sale, seized the contraband, and searched the room.

■ Citing the officers' lack of either a search warrant or arrest warrant, defendant moved to suppress the evidence seized incident to his arrest. The People retorted that exigent circumstances excused the absence of a warrant. The court denied the motion, stating: "The officer clearly had probable cause. Plain view sighting. Common practice to—once you see it, you're entitled to go get it. You're not going to wait and say I want to get a search warrant. All kinds of things can occur between that time. So the search was rapid."

On appeal, defendant concedes that Officers Forsythe and Vila had probable cause to arrest him because, while walking down a hallway open to the public, Forsythe observed in plain view, through the open doorway of defendant's room, a number of tinfoil bindles which Forsythe reasonably believed to contain heroin. Nevertheless, defendant argues that Forsythe and Vila acted unreasonably when they entered the room to arrest defendant and seize the contraband. Claiming there was no reason for the officers to believe they had been observed by defendant or his companion and nothing suggested an imminent danger that the contraband might be destroyed or otherwise disappear, defendant contends "there were insufficient exigent circumstances justifying entry into the hotel residence to arrest [him], absent an arrest warrant." In defendant's view, "[t]he only avenue available to the officers was to continue to maintain the room under observation" while an arrest warrant or search warrant was obtained. As we shall explain, it is defendant's position that is unreasonable.

Officers Forsythe and Vila were lawfully standing in a public hallway when, through the open doorway, Forsythe saw the tinfoil bindles, pieces of

---

[1]When asked how the heroin might be destroyed "within the confines of that room," Forsythe said he was concerned the culprits might swallow it.

tinfoil, plastic, knife, and razor blade on the table in a room occupied by defendant and a woman. Hence, there was no search in violation of the Fourth Amendment when Forsythe "observed criminal activity with the naked eye from a vantage point accessible to the general public." (*U.S.* v. *Garcia* (9th Cir. 1993) 997 F.2d 1273, 1279.)

However, it was not enough that the contraband was in plain view. Before Officer Forsythe could enter the hotel room to arrest defendant and seize the tinfoil bindles containing heroin, he needed to have a lawful right of access to defendant and the heroin. (*Horton* v. *California* (1990) 496 U.S. 128, and fn. 7 [110 L.Ed.2d 112, 123, 110 S.Ct. 2301].) In other words, even though the contraband was in plain view, Forsythe had to have either a warrant or legal justification to make a warrantless entry into the hotel room.

This is so because a guest room in a hotel is considered a home for purposes of the Fourth Amendment (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1297 [248 Cal.Rptr. 834, 756 P.2d 221]; *U.S.* v. *Richard* (5th Cir. 1993) 994 F.2d 244, 247), and a warrantless arrest of a person in one's home is presumptively unreasonable and prohibited by the Fourth Amendment to the United States Constitution unless the People can establish that exigent circumstances required an arrest be made before a warrant could be obtained. (*Payton* v. *New York* (1980) 445 U.S. 573, 584-590 [63 L.Ed.2d 639, 649-653, 100 S.Ct. 1371]; *People* v. *Ramey* (1976) 16 Cal.3d 263, 270-277 [127 Cal.Rptr. 629, 545 P.2d 1333]; accord, *People* v. *Williams* (1989) 48 Cal.3d 1112, 1138 [259 Cal.Rptr. 473, 774 P.2d 146].)

■ An exigent circumstance is needed for a warrantless entry into one's home regardless of the strength of the probable cause to arrest (*Horton* v. *California, supra,* 496 U.S. 128, 137, fn. 7 [110 L.Ed.2d 112, 123]) or the existence of a statute authorizing the arrest. (*Payton* v. *New York, supra,* 445 U.S. at pp. 577, 588-589 [63 L.Ed.2d at pp. 645, 652]; *U.S.* v. *Richard, supra,* 994 F.2d at pp. 244, 247; see also *People* v. *Ramey, supra,* 16 Cal.3d at pp. 270-271, 275-276.)[2]

"Exigent circumstances" justifying a warrantless, in-home arrest refer to "an emergency situation requiring swift action to prevent imminent danger

---

[2]Relying on *People* v. *Robinson* (1986) 185 Cal.App.3d 528 [229 Cal.Rptr. 851], the People contend that Penal Code section 836, subdivision (a) "is an apparent statutory exception" to the rule that "warrantless arrests conducted in the home are unlawful in the absence of exigent circumstances . . . ." (185 Cal.App.3d at p. 531.) This section provides that a peace officer may arrest a person without a warrant whenever "(1) The officer has reasonable cause to believe that the person to be arrested has committed a public offense in the officer's presence." In *Robinson,* like here, the arresting officer saw contraband in a hotel room by looking through an open door to the room, entered the room, placed the appellant under arrest, and seized the contraband. (185 Cal.App.3d at p. 531.) The majority in *Robinson* held: "Given the fact that section 836 explicitly authorizes a warrantless arrest in such an instance without listing any exception and also given the fact that section 836 has not been held unconstitu-

to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People* v. *Ramey, supra,* 16 Cal.3d at p. 276; *Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 748-753 [80 L.Ed.2d 732, 742-745, 104 S.Ct. 2091]; *People* v. *Williams, supra,* 48 Cal.3d at p. 1138.) "There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*People* v. *Ramey, supra,* 16 Cal.3d at p. 276.)

■■ The exigent circumstance cited by Officer Forsythe was his belief that immediate entry into the hotel room to arrest defendant and seize the heroin was necessary because the contraband would be destroyed if he did not act right away. To justify this conclusion, it was necessary for the prosecution to identify specific, articulable facts and "reasonable inferences drawn therefrom" which would cause a reasonable officer to believe that swift action was necessary to forestall the imminent destruction of evidence. (*People* v. *Gentry* (1992) 7 Cal.App.4th 1255, 1262 [9 Cal.Rptr.2d 742].) This requirement is measured by an objective standard, i.e., the facts known to Officer Forsythe must demonstrate that his belief in the existence of exigent circumstances was objectively reasonable. (*U.S.* v. *Schaper* (2d Cir. 1990) 903 F.2d 891, 894; cf. *Scott* v. *United States* (1978) 436 U.S. 128, 137 [56 L.Ed.2d 168, 177, 98 S.Ct. 1717] [in evaluating alleged Fourth Amendment violations, courts must undertake "an objective assessment of an officer's actions in light of the facts and circumstances then known to him"].)

Where destruction of evidence is the basis for the claim of exigent circumstances, courts have found relevant " '(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." ' " (*People* v. *Koch* (1989) 209 Cal.App.3d 770, 782 [257 Cal.Rptr. 483], quoting *United States* v. *Rubin* (3d Cir. 1973) 474 F.2d 262, 268-269; *People* v. *Gentry, supra,* 7 Cal.App.4th at p. 1261.) The absence or

tional in any case of which we are aware, appellant's arrest without a warrant and the ensuing seizure of the contraband must be upheld on this statute alone." (185 Cal.App.3d at p. 531.) We disagree. A statute does not trump the Constitution. Under the Fourth Amendment, " 'To be arrested in the home . . . is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority . . . .' " (*Payton* v. *New York, supra,* 445 U.S. at pp. 588-589 [63 L.Ed.2d at p. 652], quoting *United States* v. *Reed* (2d Cir. 1978) 572 F.2d 412, 423.)

presence of a particular factor is not conclusive. Rather, the determination of exigent circumstances turns upon whether, in light of all of the facts of the particular case, there was an urgent need justifying a warrantless entry. (*U.S.* v. *Cattouse* (2d Cir. 1988) 846 F.2d 144, 147.)

■ Defendant contends most of these factors are inapplicable to this case because there was no evidence the arresting officers were seen by him or his companion and, hence, there was no reason to believe the heroin would be destroyed. We disagree.

Officers Forsythe and Vila were walking down the hotel hallway as they passed the open door to a hotel room and Forsythe saw defendant and a woman inside. When Forsythe observed the woman counting out heroin packages and placing them on a table in the room, he was only three to six feet away from the woman, and Forsythe was as visible to defendant and the woman as they were to him. Viewed objectively, these facts were sufficient to lead a reasonable officer to believe that defendant or the woman saw, or might have seen, the officers. Since it is common knowledge that those who possess drugs often attempt to destroy the evidence when they are observed by law enforcement officers (e.g., *People* v. *Bracamonte* (1975) 15 Cal.3d 394, 405, fn. 6 [124 Cal.Rptr. 528, 540 P.2d 624] [destruction by swallowing]), it was reasonable for Forsythe to believe the contraband he saw in front of defendant and the woman was in imminent danger of being destroyed. (*United States* v. *Santana* (1976) 427 U.S. 38, 43 [49 L.Ed.2d 300, 305, 96 S.Ct. 2406] ["Once Santana saw the police, there was . . . a realistic expectation that any delay would result in destruction of evidence"].) Thus, exigent circumstances justified the warrantless entry into the hotel room.

Contrary to defendant's suggestion, the officers need not have been certain that they actually were seen by defendant or the woman. It is sufficient the officers were presented with specific circumstances from which it reasonably may be inferred that defendant or the woman had, or might have, detected their presence. (Cf. *People* v. *Gentry*, *supra*, 7 Cal.App.4th at p. 1262; *U.S.* v. *Parra* (10th Cir. 1993) 2 F.3d 1058, 1063-1064 [exigent circumstances were demonstrated where officers believed that suspects "might have observed them from the partially open door and might therefore begin destroying evidence"].)

In any event, even if it were unlikely that defendant or the woman had seen the officers, it would be unreasonable to conclude the officers should have obtained a warrant before entering the hotel room. The specific facts presented to Officer Forsythe—the hotel room door was open, and the woman was counting out packages of heroin—would lead a reasonable

officer to believe that a drug transaction was in progress, that the deal was soon to be completed, and that the purchaser or seller was about to leave the hotel room. Although there is no specific evidence in the record as to how long it would have taken to get a warrant, as a matter of common sense the time needed to do so would have been more than the few minutes in which a drug transaction could have been consummated. (Cf. *People* v. *Wilkins* (1993) 14 Cal.App.4th 761, 772 [17 Cal.Rptr.2d 743].) Accordingly, the circumstances reasonably indicated that the presence of an officer was subject to imminent discovery if one of them waited outside the room while the other left to obtain a warrant. Once defendant or the woman saw the surveilling officer, it would be likely they would attempt to escape or destroy the contraband, leaving a single officer to prevent the destruction of evidence and to arrest the two suspects. Moreover, a reasonable officer could not have been sure there were no other suspects in the hotel room since the partially opened door obscured Forsythe's view of the entire room, and although Forsythe observed no weapons, a reasonable officer could not have been certain the suspects in a narcotics transaction were unarmed. (*U.S.* v. *Cattouse, supra,* 846 F.2d at p. 146 ["Distributing narcotics is unquestionably a most serious offense [citation] and, as this court has often observed, narcotics dealers are frequently armed"].)

Hence, the circumstances presented here would lead a reasonable officer to conclude that the option of a stakeout not only was impractical but also would have constituted a threat to officer safety and posed a risk that the evidence would be destroyed.

■■ In reaching this conclusion, we bear in mind that Officer Forsythe was presented with an unexpected situation which required a quick assessment. When the occasion for arrest arises while the police are out in the field, as opposed to a "planned" arrest resulting from an investigation, there should be a far greater reluctance to fault the police for not waiting to obtain an arrest warrant. (2 LaFave, Search & Seizure (2d ed. 1987) Basis for Entry to Arrest, § 6.1 (f), pp. 601-602.) "[T]he presumption should be in favor of a warrantless arrest rather than against it, as the probabilities are high that it is not feasible for the police to delay the arrest while one of their number leaves the area, finds a magistrate and obtains a warrant, and then returns with it." (*Id.,* at p. 602, fn. omitted.) Furthermore, ". . . the question of whether a stakeout is or is not feasible is . . . a complicated one, and is unlikely to be seen by hindsight in precisely the same way it was perceived by the police on the scene." (*Id.,* at pp. 606-607.) "In the exigencies of the moment, the officers could not reasonably be expected to put fine weights on the scale in weighing the chances of securing the house or of losing their quarry." (*Id.,* at p. 607.)

Measured objectively, the specific facts known to Officer Forsythe and the inferences reasonably drawn therefrom support a finding of exigent circumstances. Thus, the officers' warrantless entry into the hotel room to arrest defendant and seize the contraband was legal, and the trial court properly denied defendant's motion to suppress evidence.

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 1995.

---

*See footnote, *ante*, page 286.