Filed 10/28/15  P. v. Dermesropian CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B256368 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. LA072395) |
| EDMUND DERMESROPIAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Affirmed.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted appellant Edmund Dermesropian of one count of felony receiving stolen property (Pen. Code, § 496, subd. (a))[1] and seven counts of misdemeanor identifying information theft (§ 530.5, subd. (c)(1)). In a bifurcated proceeding, appellant admitted a prior strike conviction (§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior prison term (§ 667.5, subd. (b)). The trial court sentenced him to a term of seven years in state prison. Thereafter, the trial court reduced appellant's conviction for receiving stolen property to a misdemeanor pursuant to Proposition 47 and resentenced appellant to one year in county jail for that offense, stayed under section 654, and to consecutive one-year county jail terms on the seven remaining counts.[2] He appeals from the judgment of conviction, contending that the trial court erred in denying his motion to suppress evidence. He also asks this court to review the in camera hearing held on his motion for *Pitchess* discovery. We affirm the judgment.

## BACKGROUND

Because the issues on appeal do not challenge the sufficiency of the evidence to support the convictions, we only briefly discuss the evidence at trial. On October 23, 2012, around 3:15 a.m., Sergeant Thomas Holzer and another officer (Officer Grumet) of the Los Angeles Police Department heard what sounded like an assault occurring in room 150 at the Voyager Motel. They gained entry, and observed a woman, Dina Poladyan,[3] standing inside, and observed

---

[1]    All unspecified section references are to the Penal Code.

[2]    In his opening brief, appellant asked that this court reduce his receiving stolen property conviction to a misdemeanor. In light of the court's reduction of the offense, the claim is now moot.

[3]    Poladyan was jointly charged with appellant. She is not a party to this appeal.

2

appellant bent over the toilet making motions as if he was ripping and discarding something.  Sergeant Holzer ordered appellant to approach.  After he complied, he was handcuffed and taken outside by Officer Grumet.

In the toilet, Sergeant Holzer found, inter alia, stolen checks written by three different people (Sharon Rosenblum, Grace Fooden, and Mary Kain).  In plain view on the bed and floor were two computers, 10 access cards, clothing with Marshalls' tags still attached, and more stolen checks and credit cards.  Under the bathroom sink were large bottles of acetone, which can be used to erase ink.  On appellant's person were four memory cards and an adapter.  As he was being taken away, appellant claimed ownership of all the items in the room.  One of the memory cards appellant possessed contained a user's guide to designing and making checks.

I. *Motion to Suppress*

A. *Evidence at the Suppression Hearing*

Defendant moved to suppress all evidence related to the entry and search of room 150 at the Voyager Motel.  The prosecution presented the following evidence.

Around 3:30 a.m. on October 23, 2012, Sergeant Holzer and Officer Grumet[4] were in the hallway of the Voyager Motel, which was known for narcotics activity, assisting an investigation of an unrelated rape case.  From down the hall, Sergeant Holzer heard the sound of a door closing and a man and woman arguing in the hallway.  It was a "heated, violent" argument, "loud screaming [and] shouting," "mainly [by] the male."  It sounded as if the people were moving down

---

[4]     Sergeant Holzer mistakenly testified that the officer's last name was Groman.

3

the hall. Sergeant Holzer then heard "a couple" of thumps, as if someone was being pushed against the wall or was striking the wall.

"[T]o make sure everybody was okay," Sergeant Holzer and Officer Grumet went to investigate. The argument quieted a bit, and the officers paused briefly outside some of the room doors to listen for the voices. From outside room number 150, Sergeant Holzer heard the argument continuing inside the room. He again heard sounds that suggested someone might be "getting hit or pushed," a "thumping against the wall, somebody hitting the wall."

Suspecting that domestic violence or an assault was occurring inside the room, Sergeant Holzer knocked on the door and demanded that someone open it. When he identified himself and Officer Grumet as police officers, the yelling ceased and it became quiet inside the room. Receiving no response and concerned that someone might be injured or prevented from opening the door, Sergeant Holzer knocked again and threatened to kick the door down if someone did not open it.

The door opened slightly and codefendant Poladyan (see fn. 3, *ante*) stepped back. Sergeant Holzer and Officer Grumet opened the door all the way, and stepped into the threshold. Codefendant Poladyan was near the edge of the bed. She appeared "upset" and "agitated." Appellant was in the bathroom kneeling in front of the toilet, making hand and arm motions over it. He appeared to be tearing something and disposing of it in the toilet. Suspecting that appellant may have been discarding something illegal and not knowing what he possessed on his person, Sergeant Holzer told appellant to stand up and come toward him. Appellant hesitated, but then stood up and walked toward Sergeant Holzer. The officers handcuffed him, and Officer Grumet took him out of the room.

4

Sergeant Holzer asked codefendant Poladyan if she was injured or needed an ambulance. She said no. He went to the bathroom and observed a number of torn checks and mail in the toilet. He removed them and put them on the floor. The checks were made out to different names, and the mail was addressed to different names as well, thus suggesting that the items were stolen. Sergeant Holzer requested additional police officers to respond to the scene. He also requested a female officer because, in his experience with domestic violence cases, female victims are sometimes more comfortable and forthcoming with a female officer.

Sergeant Holzer then spoke with codefendant Poladyan for perhaps four minutes or longer. He asked what the argument was about, her relationship to appellant, and whether she was injured. She had no visible injuries, but Sergeant Holzer was also concerned with investigating whether she had been verbally threatened. He also asked her for identification. She said that it was in her purse, but at first did not know where her purse was. Sergeant Holzer observed the purse on the bed and asked if he could get her identification. She gave permission. He opened the purse, and found identification in her name, a driver's license in another name, and checks made out to various names.

Scattered across the bed were several items of clothing, with purchase tags from Marshalls' still attached. Marshalls' receipts were on the bed and floor. Also on the bed were two backpacks and a credit card. There was also a credit card on the floor at the foot of the bed, along with two laptop computers. The credit cards were not in appellant's or codefendant Poladyan's names. Sergeant Holzer believed that the clothing might have been bought with a stolen check, because one of the Marshalls' receipts indicated the items were paid for by check.

After additional police units arrived at the scene, appellant told the officers that the backpacks were his. In one of the backpacks the officers found a California Department of Corrections (CDC) card with appellant's name.

Sergeant Holzer gave Officer Jusef Kassis codefendant Poladyan's driver's license and defendant's CDC card, and asked him to check whether appellant and codefendant Poladyan were on probation. Officer Kassis ran the names and informed Sergeant Holzer that both were on felony probation (appellant for receiving stolen property, codefendant Poladyan for forgery) with search conditions. After that, police searched the room and found a large container of acetone inside a cabinet bathroom. Sergeant Holzer explained that acetone is used to remove the written ink from checks.

Officer Kassis spoke with codefendant Poladyan, who was crying and distraught, to find out what was wrong. She explained that she had received a call from appellant, and she heard noises in the background as though a man and woman were having sex. She went to the motel to confront appellant about cheating on her, and the argument began.

Officer Kassis searched a Lincoln SUV that codefendant Poladyan had driven to the motel and appellant's pickup truck. He found acetone and a printer cartridge in codefendant Poladyan's car, and a new Coach[5] purse in appellant's truck. Police also found narcotics in codefendant Poladyan's purse.

Sergeant Holzer explained that he did not get a warrant to search the room or the cars because, with the exception of the acetone, all of the items in the motel room were in plain view, and appellant and codefendant Poladyan were on felony probation with search conditions. The parties stipulated that based on documents

---

[5] At trial, Officer Kassis testified it was a Louis Vuitton bag.

in the court's official files, appellant and codefendant Poladyan were both on felony probation subject to search and seizure conditions.

Before hearing argument, the trial court gave a lengthy tentative ruling suggesting in part that exigent circumstances justified Sergeant Holzer's entry into the motel room. Although appellant's written notice of motion challenged whether exigent circumstances justified the entry, following the court's statement of its tentative opinion, appellant's counsel stated: "I would agree with the court that there was an initial situation that in the officer's mind warranted the type of conduct that's normally consistent with exigent circumstances, an emergency type of situation." He argued, however, that the permissible scope of the Sergeant Holzer's subsequent investigation was limited to the question whether domestic violence occurred, and did not extend to retrieving the paper and mail from the toilet or conducting an investigation of possible theft: "[H]e can't effectuate a prolonged detention. He has to either conduct an investigation and make a determination of whether there is or there isn't a domestic violence situation. . . . If there isn't, he needs to release the individuals. If he believes . . . there is some other crime that's going on that requires him to search the room, he needs to get a warrant."

The trial court disagreed, and denied the motion to suppress: "[T]his was a search incident to a lawful arrest. . . . [T]he length of the detention under the unique circumstances of this case and what the officers were observing in plain view justified the length of the detention. In addition, the Court finds that the search [apparently referring to seizure of acetone from the room and search of the vehicles] actually occurred . . . after the officers learned of the probation search conditions."

7

A. *Entry Into the Room*

Appellant contends that Sergeant Holzer's threat to kick down the door, which resulted in codefendant Poladyan's opening of the door, was not justified by exigent circumstances. Therefore, the entry violated the Fourth Amendment. However, his trial counsel conceded the point in argument, and therefore the issue is forfeited. "'[T]he scope of issues upon review must be limited to those raised during argument . . . . This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions.' [Citation.]" (*People v. Williams* (1999) 20 Cal.4th 119, 136.) Even if it were not forfeited, the claim is unpersuasive.

"[The] 'police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury.' [Citation.] '"The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."' [Citation.] '"'There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.'"' [Citation.] On appeal, we uphold the trial court's factual findings if they are supported by substantial evidence, but review independently its determination that the search did not violate the Fourth Amendment. [Citation.] [¶] The '"emergency aid exception"' to the warrant requirement 'does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises.' [Citation.] Rather, the exception 'requires only "an objectively reasonable basis for believing . . ." [citation].'" (*People v. Troyer* (2011) 51 Cal.4th 599, 605.)

8

Here, Sergeant Holzer articulated facts creating an objectively reasonable basis for believing that someone inside room 150 was seriously injured or imminently threatened with such injury. Around 3:30 a.m., he heard an argument occurring out of sight in the motel hallway. It was a "heated, violent" argument, between a man and woman, with "loud screaming [and] shouting," "mainly [by] the male." As the sounds moved down the hall, Sergeant Holzer heard "a couple" of thumps, as if someone was being pushed against the wall or was striking the wall. Investigating further, from outside room 150, Sergeant Holzer heard the argument continuing inside the room, and again heard sounds that suggested someone might be "getting hit or pushed, " a "thumping against the wall, somebody hitting the wall." Suspecting that domestic violence or an assault was occurring inside the room, Sergeant Holzer knocked on the door and demanded that someone open it. When he identified himself and Officer Grumet as police officers, the yelling ceased and it became quiet inside the room. Receiving no response and concerned that someone might be injured or prevented from opening the door, Sergeant Holzer knocked again and threatened to kick the door down if someone did not open it.

On these facts, it is difficult to suggest that Sergeant Holzer had no objective basis to believe that someone inside room 150 was either seriously injured or was in danger of serious injury. Indeed, having heard the sounds of a loud, heated argument between a man and woman in the early morning hours, coupled with sounds that suggested one of them had been pushed against the wall "a couple" of times both in the hallway and in the room, he would have been derelict had he not demanded entry. "'We are to approach the Fourth Amendment . . . with at least some measure of pragmatism. If there is a grave public need for the police to take

preventive action, the Constitution may impose limits, but it will not bar the way.' [Citation.]" (*Troyer, supra,* 51 Cal.4th at pp. 605-606.)

Appellant contends that there was no justification to demand entry, and even if there were, it ceased once Sergeant Holzer announced the officers' presence and the voices in the room became silent. In substance, he suggests that the apparent "thumping" of a human body against a wall, first in the motel hallway and shortly thereafter in the room, all in the course of a loud and heated argument between a man and woman, is insufficient to create an objectively reasonable basis to believe someone might be seriously injured or in danger of such injury. Besides being counterintuitive (that a person repeatedly pushed or thrown against a wall might suffer serious injury is not a controversial proposition), the argument ignores the nature of "the emergency aid exception, where the police must make split second decisions as to whether someone is in need of immediate aid, not [the more studied determination] whether someone could be arrested for a crime." (*Troyer*, *supra,* 51 Cal.4th at p. 606.) We similarly reject the suggestion that silence following an apparent physical confrontation eliminates the possibility that someone has been injured. In short, Sergeant Holzer acted reasonably in response to what objectively appeared to be a violent altercation in which someone might be in serious danger. His demand to open the door did not violate the Fourth Amendment.[6]

B. *Search of the Toilet*

Assuming Sergeant Holzer's entry into the motel room was permissible under the Fourth Amendment, appellant contends that Sergeant Holzer's search of

---

[6] In light of this conclusion, we need not discuss appellant's contention that his trial counsel was ineffective for conceding that the demand for entry was supported by exigent circumstances.

10

the toilet was not. We disagree. The search was justified by the danger that appellant was in the process of destroying evidence of a crime.

The threat of imminent destruction of evidence is an exigent circumstance justifying a warrantless search of a residence. (See *People v. Camilleri* (1990) 220 Cal.App.3d 1199, 1209-1210.) To establish this exception, there must be "specific, articulable facts and 'reasonable inferences drawn therefrom' which would cause a reasonable officer to believe that swift action was necessary to forestall the imminent destruction of evidence. [Citation.] This requirement is measured by an objective standard, i.e., the facts known to [the officer] must demonstrate that his belief in the existence of exigent circumstances was objectively reasonable. [Citations.] [¶] Where destruction of evidence is the basis for the claim of exigent circumstances, courts have found relevant '"(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.'"' [Citations.] The absence or presence of a particular factor is not conclusive. Rather, the determination of exigent circumstances turns upon whether, in light of all of the facts of the particular case, there was an urgent need justifying a warrantless entry. [Citation.]" (*People v. Ortiz* (1995) 32 Cal.App.4th 286, 292-293 [considering exigent circumstances in the context of a warrantless entry to a residence].)

Here, Sergeant Holzer had lawfully entered the room to determine whether someone was seriously injured or in danger of suffering such an injury. Upon

entry, he observed codefendant Poladyan, who appeared to be upset and agitated, near the bed, and appellant kneeling over the toilet, making hand and arm motions suggesting that he was tearing items in an attempt to dispose of them. Sergeant Holzer was concerned that domestic violence or an assault had occurred, and also knew that the motel was a site of frequent narcotics activity. Hence, he reasonably suspected that appellant, knowing the officers were present, was trying to destroy evidence of a crime (perhaps related to the suspected assault, perhaps related to narcotics). He ordered defendant to come toward him. After hesitating, appellant complied, was handcuffed, and was taken outside. After Sergeant Holzer determined that codefendant Poladyan did not need an ambulance, he went to the toilet, observed the torn papers in the toilet in plain view, and seized them. He assembled them, and observed them to be checks and mail in various names – facts that reasonably suggested they were stolen.

On these facts, there is no doubt that the search of the toilet was justified. Knowing that police officers were present and after a delay before they were able to enter the room, appellant was observed in the act of trying to dispose of items by tearing them and putting them in the toilet to be flushed away. Appellant contends that there was no basis to suspect that he was attempting to dispose of evidence relating to a crime. In fact, there is hardly any other plausible explanation for the activity. In any event, there certainly was a distinct probability that evidence relevant to an assault (such as items with remnants of blood or injury), or containers of narcotics (the motel being known for narcotics activity) were about to be flushed down the toilet. Under these circumstances, a reasonable officer would believe that prompt action was necessary to prevent the imminent destruction of

evidence of the potential crime.  Thus, the search of the toilet, and seizure of the checks and mail, was proper.[7]

II. *Pitchess In Camera Review*

The trial court granted defendant's motion for *Pitchess* discovery and conducted an in camera hearing.  Pursuant to appellant's request, we have reviewed the transcript of the in camera hearing and conclude that the trial court fully complied with its duties.  (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1232.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

MANELLA, J.                COLLINS, J.

---

[7]     Appellant challenges no other aspects of the police conduct related to the search of the motel room or the vehicles.  We therefore do not discuss them.

13