Filed 1/29/16  P. v. Hall CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARNOLD BRYANT HALL,<br><br>    Defendant and Appellant. | B260834<br><br>(Los Angeles County<br>Super. Ct. No. VA129113) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Larry S. Knupp, Judge.  Affirmed.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, and Dana M. Ali, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following the denial of his motion to suppress, Arnold Bryant Hall pled no contest to possession of a controlled substance for sale, possession of a controlled substance with a firearm, and possession of a firearm by a felon. On appeal, he challenges the trial court's denial of his motion to suppress, arguing the evidence seized was the fruit of an illegal search of his residence. We affirm the judgment.

## FACTS

On January 10, 2013, at approximately 5:30 a.m., Los Angeles County Sheriff's Deputy Mark Madrid executed a search warrant. The warrant authorized officers to search the person of Arnold Hall and the residence located at 823 West 82nd Street, No. 3/5. Deputy Madrid and approximately six other officers knocked on the door and announced they were from the Sheriff's Department to serve a search warrant. When there was no reply, the officers forced entry. In the kitchen, the officers found a rolling set of drawers. In the top drawer, there was a glass jar containing marijuana, clear plastic baggies, and approximately $80. In the second drawer, they found a plastic container with a substance resembling rock cocaine along with empty plastic Ziploc bags. On a shelf in the kitchen, Deputy Madrid's partners found a coffee can containing 15 baggies of marijuana, a baggie of six pills resembling ecstasy, three baggies containing a substance resembling methamphetamine, and a baggie of a substance resembling powder cocaine. During the course of the search, Deputy Madrid found mail addressed to Hall at 823 West 82nd Street, No. 3/5 and at 820 W. 83rd Street, No. 12.

After they finished the search of 823 West 82nd Street, the officers proceeded to 820 W. 83rd Street, No. 12. They conducted a knock and notice, announcing they were looking for Arnold Hall and identifying themselves as Los Angeles Sheriff's deputies. Deputy Madrid heard a male voice inside the apartment and informed the person inside that he needed to open the door because they had just executed a search warrant at another location and needed to speak to him. Someone looked out of the window and Detective Missakian recognized Hall from photos Deputy Madrid had shown him earlier. Deputy Madrid informed Hall they knew he was inside and they needed to speak with him. He ignored the deputies' demand.

Deputy Madrid then heard movement inside the apartment. Based on his experience and training, Deputy Madrid concluded Hall was either arming himself or destroying evidence. As a result, the officers forced entry into the location and observed Hall standing in the bathroom over the toilet area with an object in his hands. It was a baggie containing substances resembling rock cocaine and methamphetamine. Hall was arrested and handcuffed. After the officers conducted a protective sweep of the apartment, Deputy Madrid obtained a second search warrant for 820 West 83rd Street, No. 12. The officers recovered a loaded revolver with five live rounds from this location. The revolver's serial number was scratched off. There were numerous pills resembling ecstasy in baggies as well as cash and a digital scale. Various drawers and cabinets held stacks of bills rubber-banded together. In the microwave, they discovered a substance resembling hashish. There were also multiple bags of marijuana, ecstasy, and methamphetamine. In a duffel bag, the officers found two large bags of marijuana, a .38 revolver, and 19 rounds of ammunition as well as a second digital scale.

Hall was charged in an information dated May 13, 2013, with possession for sale of: cocaine base (count 1; Health & Safety Code[1] § 11351.5), methamphetamine (count 2: § 11378), marijuana (count 3; § 11359), and cocaine (count 4; § 11351).[2] As to counts 1, 2 and 4, it was alleged Hall had been convicted of four prior offenses within the meaning of section 11370.2, subdivision (a) or (c). The information also charged Hall with possession of a controlled substance with a firearm (counts 5-6; § 11370.1, subd. (a)), possession of a firearm by a felon having four priors (count 8-9; Pen. Code, § 29800, subd. (a)(1)), and possession of cannabis (count 10; § 11377, subd. (a)). It was further

---

[1] All further section references are to the Health and Safety Code unless otherwise specified.

[2] The same day, a separate information was filed involving conduct occurring on March 5, 2013. It alleged two counts of possession for sale of cocaine base (count 1) and marijuana (count 2). The information alleging conduct relevant to this appeal, occurring on January 10, 2013, is found under case No. VA129113; case No. VA129130 involves the March 5, 2013 conduct.

alleged as to all counts that Hall had suffered a prior conviction pursuant to Penal Code section 667.5, subdivision (b).

Hall moved to suppress the evidence seized during the search of the second location at 820 West 83rd Street, No. 12. Hall argued entry into the second location was unlawful because there were no exigent circumstances justifying the forcible entry and the initial warrant was only for a search of 823 West 82nd St, No. 3/5. Further, the warrant subsequently obtained by Deputy Madrid was based on information discovered after the unlawful entry and on coerced statements from Hall.

At the hearing on the motion to suppress, Deputy Madrid testified to the events as described above. Hall testified the second residence was his home. He received mail at the first location only for his work. On the night in question, he was asleep on the couch when he heard the police pound on his door. He got up to go to the bathroom and brought his cellphone with him. When the police forced entry, he complied with their demand to put his hands up and dropped his phone. They then searched the home prior to obtaining the second warrant. Hall admitted the narcotics found in the apartment belonged to him.

The motion to suppress was denied. The trial court reasoned, "They had, in hand, at that time they went to the second location, a search warrant naming this defendant, and they went over to find this defendant." Thereafter, Hall entered a plea agreement under which he pled no contest to counts 1, 5, and 8 in case number VA 129113 and count 1 in case number VA 129130. He further admitted he suffered a prior conviction within the meaning of section 11370.2, subdivision (a) as to count one in both cases.

4

Hall was sentenced to an aggregate term of seven years, eight months and was given custody credit of 448 days. Additionally, restitution and parole revocation fines were imposed under Penal Code sections 1202.4 and 1202.45. Hall appealed.[3]

## DISCUSSION

Hall maintains the trial court erred when it denied his motion to suppress because the evidence obtained from the second location was the fruit of an illegal search. Hall established that the second location was his home. He claims there were no exigent circumstances to justify the deputies' warrantless entry into his home. He contends the deputies should have secured the apartment and obtained a warrant before entering. We disagree.

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." (*Payton v. New York* (1980) 445 U.S. 573, fn. omitted.) When officers enter a home without a warrant, the People bear the burden of establishing, by a preponderance of the evidence, that exigent circumstances justified the warrantless entry. (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 181; *People v. Camacho* (2000) 23 Cal.4th 824, 830. "The United States Supreme Court has indicated that entry into a home based on exigent circumstances requires *probable cause* to believe that the entry is justified by one of these factors such as the imminent destruction of evidence or the need to prevent a suspect's escape.' [Citation.]" (*People v. Thompson* (2006) 38 Cal.4th 811, 817-818.)

"There is no ready litmus test for determining whether [exigent] circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*People v. Ramey* (1976) 16 Cal. 3d 263, 276.) When reviewing a trial court's denial of a motion to suppress, "we uphold [the trial court's] factual findings, whether express or implied, if they are supported by substantial evidence. [Citation.] We then exercise our independent judgment and 'measure the

---

[3] Hall failed to timely appeal, but his application for relief from default for failure to timely file a late notice of appeal was granted. Hall subsequently filed a notice of appeal as directed under the order granting relief.

5

facts, as found by the trier, against the constitutional standard of reasonableness' to determine whether the search and seizure were lawful." (*People v. Rios* (2011) 193 Cal.App.4th 584, 589.)

The parties focus on three cases which provide a useful guide to when exigent circumstances exist: *People v. Daughhetee* (1985) 165 Cal.App.3d 574 (*Daughhetee*), *People v. Johnson* (1981) 123 Cal.App.3d Supp. 26, 30-31 (*Johnson*), and *People v. Ortiz* (1995) 32 Cal.App.4th 286 (*Ortiz*).

In *Daughhetee,* an officer received a description of two armed robbery suspects, a man and a woman, and a description of the getaway car along with the license plate. The car was found parked in a driveway of a residence. The officer who found the car requested assistance, but before any other officers arrived, he observed a woman exit the home and get into another car. (*Daughhetee, supra,* at p. 577.) The officer detained the woman before she could leave and observed two other men looking out of the windows of the house. He entered the home and detained both men. A search was conducted only after a search warrant was obtained. The court held exigent circumstances existed to justify entry in to the defendant's residence because the officer reasonably was concerned with destruction of evidence and officer safety. (*Id.* at p. 578.)

In *Johnson*, officers were investigating a complaint that defendant and his companion failed to pay a cab fare. They knocked on the defendant's hotel room door and identified themselves. (*Johnson, supra,* 123 Cal.App.3d Supp. at p. 26.) When defendant answered the door, the officers observed drug paraphernalia. The court held exigent circumstances existed. "Although the officer did not specifically articulate the exigent circumstances which he felt required him and his partner to enter the motel room of defendant [] without a warrant, it is clear that the failure of the officers to take prompt action in entering might have permitted the suspects to escape or to destroy the evidence that the officer saw from outside the room." (*Id.* at p. 32, fn. omitted.)

In *Oritz,* two officers were walking down a hotel hallway when they observed a woman inside one of the rooms counting out tinfoil bindles and placing them on a table. The defendant was sitting on the bed. The officer entered the room, arrested the two

6

suspects, and seized the contraband. (*Ortiz, supra*, 32 Cal.App.4th 286.) The court determined exigent circumstances justified the warrantless entry into the hotel room for the arrest because the officers reasonably feared the contraband might be destroyed if they did not act immediately even though it was unclear whether the occupants of the room knew the officer had seen them. (*Id.* at p. 292.)

The *Ortiz* court stated, "Where destruction of evidence is the basis for the claim of exigent circumstances, courts have found relevant ' "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.' " ' [Citations.] The absence or presence of a particular factor is not conclusive. Rather, the determination of exigent circumstances turns upon whether, in light of all of the facts of the particular case, there was an urgent need justifying a warrantless entry. [Citation.]" (*Ortiz, supra,* 32 Cal.App.4th at pp. 292-293.)

Under the guidelines presented in *Ortiz, Johnson,* and *Daughhetee,* we find exigent circumstances justified the officers' warrantless entry into Hall's residence. Deputy Madrid was lawfully executing a search warrant for the search of Hall's person and of 823 West 82nd Street, No. 3/5 when he discovered mail that indicated Hall might be located at a different address. Therefore, the officers had reason to look for Hall at the 83rd Street location. When they arrived, they announced their presence and identity. They also informed Hall they had searched the other location. Hall admitted he knew the officers were outside. As in *Daughhetee*, the officers saw Hall looking outside. Hall refused to comply with the deputies' request to speak to him. Having discovered narcotics at the first location, the officers reasonably suspected there were also narcotics at the second location. Based on what they found at the first location, the officers had reason to believe Hall sold narcotics. Deputy Madrid testified that in his training and

7

experience, narcotics dealers often were armed.  He therefore believed Hall was either arming himself or destroying evidence when he heard movement inside the residence.

Hall argues there was no support for Deputy Madrid's conclusion that Hall had drugs inside the second location.  Because the officers did not see any drugs, he claims *Ortiz, supra,* 32 Cal.App.4th at pages 292-293, is not helpful to the People.  He also argues Deputy Madrid did not know drugs were being destroyed or that Hall was getting a gun.  In his words: "Deputy Madrid could not articulate that he actually knew these facts, just that these facts 'may' be occurring."  Finally, he claims all of the three cases cited by the parties are distinguishable because, in those cases, the officers observed criminal activity occurring or actually saw the drugs near the defendants.

Contrary to Hall's contention, *Ortiz* tells us the officers did not need to have actually seen the drugs.  In *Ortiz*, the officers observed a woman counting out tinfoil bindles, but did not see what was in the bindles.  From their observation, they "reasonably" believed the bindles contained heroin.  (*Ortiz, supra,* at p. 289.)  Here, the circumstances surrounding the officers' discovery of narcotics from the first location provided a reasonable basis for them to believe there were narcotics at the second location.  They also reasonably believed Hall could be armed.  Deputy Madrid testified, based on his experience and training, "narcotics dealers often have firearms and other weapons stowed in the locations they are selling from."

Further, we are not convinced that the officer needed to have actual knowledge the contraband was being destroyed.  It is common knowledge that those who possess drugs often attempt to destroy them when they are observed by law enforcement officers. (See e.g., *People v. Bracamonte* (1975) 15 Cal.3d 394, 405, fn. 6 [destruction by swallowing]; *United States v. Santana* (1976) 427 U.S. 38, 43 ["Once Santana saw the police, there was . . . a realistic expectation that any delay would result in destruction of evidence"].)  Given these circumstances, including the seizure of the drugs at the first location, the officers were justified in entering the apartment without a warrant to guarantee their own safety and to prevent the destruction of evidence.

**DISPOSITION**

The judgment is affirmed.

BIGELOW, P.J.

We concur:

RUBIN, J.

GRIMES, J.