Filed 7/23/21  P. v. Alonzo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F081532 |
| Plaintiff and Respondent, | (Super. Ct. No. BF176208A) |
| v. | |
| INDICA NAIDEEN ALONZO, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe and Judith K. Dulcich, Judges.[†]

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]     Before Hill, P.J., Levy, J. and Peña, J.

[†]     Judge Lampe ruled on the challenged suppression motion; Judge Dulcich presided at the sentencing hearing.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Indica Naideen Alonzo pled no contest to possession of methamphetamine for sale and was granted a three-year term of probation. She contends on appeal that (1) the search that led to the discovery of the methamphetamine was unlawful because it was preceded by an unduly prolonged detention while officers obtained a search warrant, which became a de facto arrest without a warrant or probable cause, and (2) her term of probation must be modified to two years pursuant to Penal Code section 1203.1,[1] subdivision (a), as amended by Assembly Bill No. 1950 (2019−2020 Reg. Sess.) (Assembly Bill 1950). As to the first issue, the People disagree, arguing that the detention was minimally invasive, limited in duration, and necessary to prevent destruction of evidence. As to the second issue, the People agree that defendant is entitled to the benefit of Assembly Bill 1950, but argue that the matter must be remanded to permit the People and the trial court an opportunity to accede to a two-year term of probation or withdraw approval for the plea agreement. We vacate the sentence and remand the matter to the trial court to modify the term of probation in conformity with Assembly Bill 1950 and to permit the People and the trial court an opportunity to accede to the modified terms of probation or withdraw approval for the plea agreement.

## PROCEDURAL SUMMARY

On April 5, 2019,[2] the Kern County District Attorney filed a complaint charging defendant and her husband with transportation of methamphetamine (Health & Saf.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     All further dates refer to the year 2019 unless otherwise stated.

2.

Code, § 11379, subd. (a); count 1), possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 2), possession of metal knuckles (§ 21810; count 3), and possession of a blackjack (§ 22210; count 4).

On August 22, defendant filed a motion to suppress evidence obtained as the result of the search of her duffel bag and hotel room. On December 10, the trial court denied defendant's motion to suppress and held her to answer on counts 1 and 2.

On December 13, the Kern County District Attorney filed an information, reflecting that defendant had been held to answer on counts 1 and 2.

On June 4, 2020, defendant filed a motion to dismiss pursuant to section 995, again arguing that the evidence obtained from the search of her duffel bag and hotel room should be suppressed. On June 19, 2020, the trial court denied defendant's motion to dismiss. On the same date, defendant pled no contest on count 2 in exchange for dismissal of count 1 and a three-year term of probation. The agreed-upon terms of probation included 180 days' work release and 100 hours community service.

On July 30, 2020, the trial court granted defendant probation on the agreed-upon terms.

On August 4, 2020, defendant filed a notice of appeal.

## FACTUAL SUMMARY

### The Suppression Hearing

On December 10, the trial court held a hearing on defendant's motion to suppress evidence pursuant to section 1538.5.

On March 28, at approximately 10:15 a.m., Bakersfield Police Officer Fabian Barrales and his partner, Officer Beeson, were on patrol. Barrales saw a tan pickup truck with no front windshield wiper blades and "extremely tinted" front windows. The

3.

officers conducted a traffic stop. Richard Alonzo[3] was the driver of the pickup. Barrales described Richard as appearing nervous—he was sweating profusely despite the cool weather and was moving his hands near his waistband where he appeared to be concealing an object.

Barrales asked Richard to step out of the pickup. Richard complied and Beeson conducted a pat-down search, revealing a three-inch fixed blade knife in Richard's waistband. Beeson conducted a records check and the officers learned that Richard had recently been arrested for narcotics trafficking. Beeson then called for a canine officer to help with a search.

Within five minutes, Officer Jonathan Berumen arrived with his canine, Rocco. Berumen and Rocco conducted a narcotics sniff of the pickup. Rocco alerted Berumen to the presence of narcotics in the pickup. Berumen and Beeson searched the pickup and discovered a bag containing 113 grams of methamphetamine, a collapsible metal baton, a set of metal knuckles, and a hotel room key card. Barrales believed that the hotel key card may unlock a room Richard used as a stash house to store additional methamphetamine. He reported the discovery of the methamphetamine and hotel room key card to Detective Carlos Arvizu.

Arvizu retrieved the hotel room key card from Barrales. Arvizu contacted the manager of the hotel and learned that the room was registered to defendant.[4] Arvizu and other narcotics officers created a perimeter around the hotel to "freeze the location" while Arvizu authored a search warrant application and awaited approval. While Arvizu was authoring the search warrant application, he saw defendant exit the hotel carrying a large

---

[3]     Because Richard Alonzo shares a last name with defendant, we refer to him by his first name.

[4]     Arvizu had assisted in arresting Richard for possession of methamphetamine in a previous, unrelated case. During that prior encounter, Arvizu had learned that defendant was Richard's wife or ex-wife.

green duffel bag. Detective Diaz detained defendant and removed the duffel bag from her possession pending approval of the search warrant. Within 15 to 30 minutes of defendant's detention, at 1:26 p.m., the search warrant application was approved. The officers then searched defendant's person, the duffel bag, and the hotel room.

On that record, the trial court denied defendant's motion to suppress. It concluded that under those circumstances, the prewarrant detention of defendant was reasonable in duration.

**The Preliminary Hearing**

Immediately after denying defendant's motion to suppress, the trial court continued to the preliminary hearing (incorporating the evidence already presented for the motion to suppress).

Arvizu watched Diaz and another officer search the duffel bag and discover four plastic bags containing a total of 20.5 grams of methamphetamine, a digital scale, and two pipes for smoking methamphetamine. Arvizu then saw a loaded shotgun that Diaz found in the hotel room.

Defendant was held to answer on counts 1 and 2.

## DISCUSSION

**A. Motion to Suppress Evidence**

Defendant argues that the evidence obtained in the searches of her duffel bag and hotel room should have been suppressed because they were preceded by a detention that was more than minimally intrusive and was unreasonable in duration. She contends that the detention therefore constituted a warrantless arrest without probable cause in violation of the Fourth Amendment of the United States Constitution. The People disagree, as do we.

> "In deciding whether relevant evidence must be suppressed, we look exclusively to the requirements of the United States Constitution. [Citation.] In reviewing a ruling on a suppression motion, we 'defer to the trial court's factual findings, express or implied, where supported by

5.

substantial evidence.' [Citation.] 'In determining whether, on the facts so found [and/or facts that are undisputed], the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' [Citations.] The prosecution always bears the burden of justifying, by a preponderance of the evidence, that a warrantless search or seizure falls within a recognized exception to the warrant requirement." (*People v. Gutierrez* (2018) 21 Cal.App.5th 1146, 1152.)

"The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the right to be free of unreasonable searches and seizures." (*People v. Gallegos* (2002) 96 Cal.App.4th 612, 622.) Generally, police contact with individuals in public places will fall into one of three categories: (1) a consensual encounter, (2) a detention, and (3) an arrest. (*People v. Bailey* (1985) 176 Cal.App.3d 402, 405.) Detentions are "seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' " (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784; see *Berkemer v. McCarty* (1984) 468 U.S. 420, 439–440 [" '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' "].) Arrests, on the other hand, require probable cause. (*People v. Celis* (2004) 33 Cal.4th 667, 673.) " '[T]here is no hard and fast line to distinguish … investigative detentions from … de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances.' [Citations.] Important to this assessment, however, are the 'duration, scope and purpose' of the stop." (*Celis*, at pp. 674–675.) A detention that is unreasonably prolonged amounts to a de facto arrest that must be supported by probable cause to be constitutionally valid. (*Dunaway v. New York* (1979) 442 U.S. 200, 212.)

If a detention itself is unlawful, its fruits—that is, evidence subsequently obtained from searches, as well as any statements made by the defendant in connection with those searches—must be suppressed. (*United States v. Crews* (1980) 445 U.S. 463, 470.)

The parties agree, as do we, that defendant's detention began when officers stopped her as she attempted to leave the hotel. The parties disagree on the duration of the detention. Defendant—in reliance on a comment by the trial court in ruling on her motion—contends that the detention continued for " 'an hour or more.' "[5] However, the People correctly note that no evidence was presented to suggest that defendant's detention continued for more than 15 to 30 minutes. Arvizu testified that he was unsure what time on March 28, defendant was detained, but it was not in the morning. Defendant was stopped while Arvizu was authoring the search warrant application. The search warrant application was eventually approved at 1:26 p.m. Arvizu estimated that 15 to 30 minutes passed between the time defendant was detained and when the search warrant application was approved. While it is not clear to us that the trial court intended to find that defendant was detained for an hour or more, to the extent it intended to reach

---

[5] It is not clear to us that the trial court intended to indicate that defendant was necessarily detained for more than an hour. The trial court's statement reads as follows:

> "To the extent that there is a question regarding the length of detention, it is true that depending on the length of detention it may exceed Constitutional bounds when it extends beyond that which is reasonably necessary to accomplish the permissible purpose of the detention. [¶] But here the permissible purpose of the detention was to obtain the search warrant. And although the process of obtaining the search warrant is not an immediate process, there is an administrative procedure that has to be undertaken. It was undertaken with dispatch. There was no delay in obtaining the search warrant and the search then ensued. If anything it was—may have been an hour or more. … I don't think that that's an unreasonable detention in order to complete the search warrant and accomplish … the lawful purposes that the officers were there to accomplish and enforce the law."

that conclusion, it was not supported by substantial evidence. Based on the evidence in the record, defendant was detained for 15 to 30 minutes.

A warrantless temporary seizure is not *per se* unreasonable if compelled by exigent circumstances—for instance, "the need to prevent the destruction [or loss] of evidence." (*Kentucky v. King* (2011) 563 U.S. 452, 455; *Illinois v. McArthur* (2001) 531 U.S. 326, 331 (*McArthur*).) To determine whether the seizure is reasonable, "we balance the privacy-related and law enforcement-related concerns …." (*McArthur*, at p. 331.)

" 'Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, … the [Fourth] Amendment … permit[s] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it ….' " (*People v. Tran* (2019) 42 Cal.App.5th 1, 11; see *People v. Ortiz* (1995) 32 Cal.App.4th 286, 291–292 [allowing warrantless entry into a hotel room to prevent destruction of suspected heroin].) A temporary warrantless detention of a defendant exiting a property to be searched is also permitted when an officer has reasonable cause to believe the defendant may be leaving with evidence. (*People v. Daughhetee* (1985) 165 Cal.App.3d 574, 577–578.)

The People argue that *McArthur* should guide our decision. In *McArthur*, the defendant was prevented from reentering his home, inside which officers believed he was hiding marijuana, until they obtained a warrant to search the home. (*McArthur*, *supra*, 531 U.S. at pp. 328–329.) The defendant was detained for approximately two hours while the officers obtained a warrant. (*Id*. at pp. 328, 332.) The Supreme Court concluded that, under the circumstances, the officers acted reasonably and did not violate the Fourth Amendment. (*Id*. at p. 331.) The court explained that the officers (1) had probable cause to search the home for marijuana, (2) reason to believe that the defendant might have destroyed the marijuana if not restrained, (3) "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy" by

8.

detaining defendant but leaving his home and belongings unsearched until they obtained a warrant, and (4) "imposed the restraint for a limited period of time, namely, two hours." (*Id*. at pp. 331–333.)

Defendant contends that *McArthur* is inapposite because no probable cause existed to search defendant (as opposed to Richard or the hotel room). We disagree. The case at bar is very similar to *McArthur*. Here, Richard possessed methamphetamine and the hotel room key card. The hotel room was registered to defendant. On that record, the officers had a reasonable suspicion that Richard *and* defendant used the hotel room to store methamphetamine. When defendant exited the hotel with a duffel bag, the officers reasonably believed that she may have been attempting to remove methamphetamine from the hotel room. They detained her for 15 to 30 minutes, performed a pat-down search, and removed the duffel bag from her possession. They did not search the duffel bag or hotel room until after they obtained the search warrant. The officers struck a fair balance between defendant's privacy interests and the law enforcement needed to prevent destruction of evidence.

In sum, the officers' 15- to 30-minute detention was permissible because exigent circumstances existed for the detention which was limited in duration and scope and was supported by an articulable suspicion of wrongdoing. The trial court did not err in denying defendant's motion to suppress and motion to dismiss.

### B. Assembly Bill 1950

#### 1. Applicability

Effective January 1, 2021, Assembly Bill 1950 amended sections 1203a and 1203.1 to limit the maximum term of probation a trial court is authorized to impose for most felony offenses to two years and most misdemeanor offenses to one year. (§§ 1203a, subd. (a), 1203.1, subds. (a) & (m), as amended by Stats. 2020, ch. 328, §§ 1, 2.) "[T]he … limitation[s] on … probation set forth in Assembly Bill … 1950 [are] ameliorative change[s] to the criminal law that [are] subject to the [*In re*] *Estrada* [(1965)

63 Cal.2d 740] presumption of retroactivity." (*People v. Sims* (2021) 59 Cal.App.5th 943, 963–964; accord, *People v. Quinn* (2021) 59 Cal.App.5th 874, 883–885.) Therefore, the amendments to sections 1203a and 1203.1 apply to all cases not final on Assembly Bill 1950's effective date. (*Estrada*, at p. 742.)

As the parties agree, defendant's case was not final on January 1, 2021, and she was sentenced to a term of felony probation exceeding two years for a crime of conviction that is not a violent felony exempted from the two-year limit on felony probation. (§§ 1203.1, subd. (m), 667.5, subd. (c).)[6] We agree. Defendant is entitled to the benefit of Assembly Bill 1950.

### 2. Remedy

The parties disagree on the appropriate remedy—defendant contends we should modify her term of probation; the People contend we should remand the matter to the trial court to modify the term of probation. Because the term of probation was negotiated as part of a plea agreement, we remand the matter for the trial court to modify the term of probation consistent with Assembly Bill 1950 and to permit the People and the trial court the opportunity to withdraw approval of the plea agreement in light of the required modification to the term of probation.

In *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), our Supreme Court concluded that a defendant was entitled to the benefit of an ameliorative change in the law— specifically, pursuant to Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393), he was entitled to have the matter remanded for the trial court to exercise its discretion to strike a serious felony conviction enhancement in the interest of justice. (*Stamps*, *supra*, 9 Cal.5th at p. 699.) However, because the serious felony conviction enhancement was imposed as part of a negotiated stipulated sentence, if the trial court exercised its

---

**6** Possession of methamphetamine for sale (Health & Saf. Code, § 11378) is not a violent felony offense excluded from section 1203.1, subdivision (a)'s two-year limit on duration of felony probation by section 1203.1, subdivision (m).

discretion to strike the enhancement, the People and the trial court were permitted to withdraw approval for the plea agreement. (*Id.* at pp. 707–708.) The defendant was not permitted " ' "to whittle down the sentence 'but otherwise leave the plea bargain intact ….' " ' " (*Id.* at p. 706.)

This court reached the same conclusion in *People v. Hernandez* (2020) 55 Cal.App.5th 942 (*Hernandez*) (review granted Jan. 27, 2021, S265739), where we directed the trial court to strike prior prison term enhancements pursuant to Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136), but also concluded that the People and trial court must be permitted to withdraw approval for the negotiated plea. (*Hernandez*, at pp. 958–959.) We explained that the distinction between the discretionary nature of Senate Bill 1393 (*permitting* trial courts to strike serious felony enhancements) and the mandatory nature of Senate Bill 136 (*prohibiting* imposition of prior prison term enhancements for convictions not served for sexually violent offenses) was not dispositive to the issue of whether the People or a trial court must be permitted to withdraw from a plea agreement. (*Hernandez*, at p. 957.) Instead, we explained, we review "the history of the amendment[] to determine whether there was any intent [] 'to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification' to determine whether the district attorney can withdraw from the plea agreement." (*Ibid.*; accord, *Stamps*, *supra*, 9 Cal.5th at p. 701 ["In order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, defendant must establish not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385."].) We concluded that "there is no evidence the Legislature intended Senate Bill 136 to permit the trial court to unilaterally modify a plea agreement once the prior prison term enhancements are stricken." (*Hernandez*, at p. 958.)

11.

Like Senate Bills 1393 and 136, there is no evidence that the Legislature intended Assembly Bill 1950 to permit unilateral modification of plea agreements by shortening negotiated terms of probation.[7] We therefore vacate the sentence and remand the matter to the trial court to impose a term of probation that conforms with Assembly Bill 1950 and to permit the People and the trial court an opportunity to accede to the shorter term of probation or withdraw from the plea agreement.

### 3. Limitations on Future Sentencing Options

Defendant next argues that if the matter is remanded and the plea agreement is rescinded, the term of imprisonment for any new sentence cannot exceed the term agreed upon in the original plea agreement. We disagree.

In *People v. Collins* (1978) 21 Cal.3d 208, the court considered the proper procedure after an offense to which a defendant pled guilty pursuant to a plea agreement was decriminalized. (*Id*. at p. 212.) In *Hernandez*, we "acknowledge[ed] the holding in *Collins* that allowed the prosecution to refile the previously dismissed charges as long as the defendant was not resentenced to a greater term than provided in the original plea agreement." (*Hernandez, supra*, 55 Cal.App.5th at p. 959.) We then concluded that "*Stamps* did not extend *Collins* to permit such a" limitation of sentencing options in this situation. (*Hernandez*, at p. 959.) *Stamps* "instead held the People could completely withdraw from the plea agreement if the prior serious felony enhancement was

---

[7] To be clear, we recognize that the Assembly and Senate Committees on Public Safety both explain that proponents of Assembly Bill 1950 assert in broad terms that shortening terms of probation is beneficial for society and probationers. For instance, the Senate Committee on Public Safety summarized a proponent's view that "probation supervision is most beneficial in the early part of a probation term" and shorter terms of probation "would enable probation officers to more efficiently manage their caseloads." (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1950 (2019–2020 Reg. Sess.), as amended June 10, 2020, p. 5.) While those positions certainly support reduced terms of probation, they do not speak to whether Assembly Bill 1950 was intended to modify negotiated plea agreements.

dismissed." (*Hernandez*, at p. 959.) The parties would thus be restored to the "status quo ante." (*Stamps*, *supra*, 9 Cal.5th at p. 707.)**8** We do not depart from *Hernandez*. Upon remand, if the plea agreement is vacated, the matter will be restored to the status quo ante and any eventual sentence will not be capped by the sentence imposed pursuant to the original plea agreement.

## DISPOSITION

The sentence is vacated. The matter is remanded to the trial court to modify the term of probation to conform with Assembly Bill 1950 and permit the People and trial court an opportunity to withdraw from the plea agreement.

---

**8** The court in *People v. Griffin* (2020) 57 Cal.App.5th 1088, 1099, disagreed with our conclusion. (Accord, *People v. Houle* (2021) 64 Cal.App.5th 395, 398.) The *Griffin* court commented that "*Stamps* never addressed the language in *Collins* capping the sentence that could be imposed on remand, and *Stamps* never addressed whether the trial court could properly impose a longer sentence on remand." (*Griffin*, at p. 1099.) The *Griffin* court further found that the limitation of sentence imposed in *Collins* was more appropriate than the restoration to the status quo ante in *Stamps* because Senate Bill 136—like the decriminalization of an act to which the defendant had pled guilty in *Collins*—was an " 'external event[]' that simply rendered the plea agreement[] unenforceable." (*Griffin*, at p. 1099.) We respectfully disagree with *Griffin*.

13.